**Robert KAGARISE, Albert E. Mountain, Pauline May, Individually and on behalf of all other persons similarly situated, Appellants,**

v.

**CUMBERLAND, MARYLAND AREA TEAMSTERS PENSION FUND, an unincorporated association.**

**No. 81–1382.**

United States Court of Appeals, Third Circuit.

Argued Sept. 18, 1981.

Decided Oct. 2, 1981.

Samuel J. Pasquarelli (argued), Jubelirer, Pass & Intrieri, Pittsburgh, Pa., for appellants.

David L. Beck, Weis & Weis, Pittsburgh, Pa., Charles J. Streiff (argued), Wick, Vuono & Lavelle, Pittsburgh, Pa., for appellee; Lafe C. Chafin, Barrett, Chafin, Lowry & Hampton, Huntington, W. Va., of counsel.

Before GIBBONS and HUNTER, Circuit Judges, and STERN,* District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

Robert Kagarise, Albert E. Mountain and Pauline May, claimants, respectively, for a disability pension, a retirement pension and a survivors benefit pension, appeal from a judgment in favor of Cumberland, Maryland Area Teamsters Pension Fund (the Fund) in their suit which challenged the method of calculating benefits.[1] We affirm.

The Fund is a qualified pension trust organized and administered under Section 302 of the Labor Management Relations Act of 1947. 28 U.S.C. § 186. It provides benefits for eligible participants and beneficiaries from funds obtained by contributions agreed upon as a result of collective bargaining. The level of benefits is determined by a formula depending in part upon length of service during which contributions have been received. If an eligible participant has worked for only one employer, or for employers contributing to one pension fund, the calculation of service credit will ordinarily be made as of the date of termination of employment by employers contributing to that fund. Because Teamster Union members sometimes change location, that might result in ineligibility for benefits because of insufficient years of service. To meet this problem a number of Teamster pension funds have entered into the Reciprocal Agreement for Teamster Pension Funds. The Reciprocal Agreement provides that when contributions have been made to two or more funds for the account of an employee each fund will provide a partial benefit payment. This suit involves the method of calculation of the partial benefits to be paid by the Fund to participants or beneficiaries under the Reciprocal Agreement.

The Reciprocal Agreement requires that each participating Fund amend its plan to provide for payment of partial benefits as follows:

(a) The amount of the pension to which the employee would be entitled under this Plan taking into account his Combined Service Credit shall be determined, then

(b) The amount of service credit earned with this plan since January 1, 1955, shall be divided by the total amount of Combined Service Credit earned by the employee since January 1, 1955, then

(c) The fraction so determined in (b) shall be multiplied by the pension amount determined in (a) and the result shall be the Partial Pension Amount payable by this Plan.

Under this formula each Fund to which contributions have been made is charged with service credit for the period of time that contributions were made to it for the account of a participant. The dispute centers on the calculation of the amount of the benefit (unit multiplier) by which the proportionate share of service credit is multiplied. Shortly after the Fund became a participant in the Reciprocal Agreement it announced that in determining partial payments it would use the level of benefits to which the participant would be entitled at the date of his retirement, rather than at the date he ceased to be a participant. Since contributions and benefits were in an inflationary economy increasing, the result of this method of calculation was that the Fund would pay benefits disproportionate to contributions received in those cases where the employee ceased to be a participant prior to his retirement. In 1978 the Fund trustees, on the advice of their actuary, adopted a change in the method of

---

* Hon. Herbert J. Stern, United States District Judge for the District of New Jersey, sitting by designation.

1. The district court has jurisdiction over civil actions to recover benefits due under the terms of a plan covered by the Employees Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B). Plaintiffs originally sought to maintain the action as a class action, but the parties agreed, prior to trial, that the Fund would recalculate benefits for all affected participants in accordance with the judgment in their individual suit. Thus the action disposed of their individual claims only.

calculation, using as the unit multiplier the level of benefits in effect on the date of termination of participation. The complaint requests that the trustees be ordered to rescind this action and to recalculate benefits using as the unit multiplier the benefits in effect at the date of retirement.

██ The claimants contend that the Reciprocal Agreement mandates the calculation which they urge. They argue that the words "the amount of the pension to which the employee would be entitled under this Plan taking into account credited service" can only be construed to require use of a unit multiplier determined at the time total combined service credit is known. The trial court rejected this construction, ruling that

[s]ection 8(a) states only that the amount of the partial pension benefits "shall be determined" by taking into account the amount of the individual's combined service credit. It does not state whether the partial pension benefit shall be determined at the time of retirement and application is made or at the time an individual leaves the Cumberland Fund.

We agree that the language relied upon does not determine the disputed issue.

██ Plaintiffs next argue that even if the wording is ambiguous, there is strong extrinsic evidence that the Reciprocal Agreement means the unit multiplier to be determined as of the date of retirement. They introduced two documents which were evidently prepared and distributed by the major draftsman of the Reciprocal Agreement shortly after it was drafted to aid in explaining it. The documents are entitled "Key Points of 'Reciprocal Agreement for Teamsters Pension Funds'" and "Example of Partial Pensions."

The "Example" page, while not indicating how the unit multiplier is to be determined, apparently does employ figures from actual pension funds that represent the level of benefits at the date of retirement. Plaintiffs argue that this evidence confirms their interpretation of the words of the Reciprocal Agreement.

The district court concluded

that although the calculation sheets may have been stapled to the Reciprocal Agreement in some cases, they were never intended to be part of that agreement. They represented a somewhat informal attempt to summarize the key points of the Reciprocal Agreement as well as some examples as to the method of calculation of partial pension benefits.

More significantly, we conclude that the calculation sheets marked as Plaintiff's Exhibit 9 do not indicate that any particular unit multiplier must be employed by a signatory fund.

The court also noted that on the "Key Points" page it is explained that "Each Fund calculates—on its own—the benefit the employee would have received in accordance with its own rules and benefit formulas *if* all the combined credited service had been with its Fund." The court concluded that this indicated "that the method of calculation is established according to the rules and benefit formulae of each particular Fund."

We cannot fault the district court's conclusions with respect to these accompanying explanatory pages. The court had ample support for those conclusions in the testimony of Frank Stokes, an actuary consulted by the Fund since 1968, that the sheets were not a part of the Reciprocal Agreement and did not, in any event, indicate a single method for determining the unit multiplier. They had a mainly explanatory function and are susceptible of the same interpretation concerning the unit multiplier as the court's interpretation of the words of Section 8.

Plaintiffs' final argument as to the meaning of the Reciprocal Agreement is based upon the Fund's own practice. On June 16, 1969, about fourteen months after the date the Fund became signatory to the Reciprocal Agreement, its Secretary-Treasurer "raised for discussion the need for an amendment that will provide a partial pension for members (under a Reciprocal Agreement) who transfer out of the Cumberland Plan in such amount as was provided by the Cumberland Plan at the time the

members transferred to another Plan.... [I]t was unanimously resolved that the consultants be instructed to prepare such amendment...." Minutes of Annual Meeting of Trustees of the Fund.

Plaintiffs urge that this proposal concerned an amendment to the Reciprocal Agreement, not an amendment to the Plan itself. Insofar as this is the case, it would appear that such an amendment was necessary only if the Reciprocal Agreement had initially mandated a different means of calculating the unit multiplier.

The Fund's explanation for this proposal was that the trustees' action was merely meant to amend the Plan to insure that the provisions of Exhibit A of the Reciprocal Agreement were incorporated. The record contains no explanation for the fact that the Reciprocal Agreement itself states, "WHEREAS, the Trustees of each signatory Fund have each adopted an amendment to their Pension Plan governing eligibility for and payment of Partial Pensions, in the form annexed hereto as Exhibit A; ...." The only explanation suggested by the record for the fourteen month delay in thus amending the Plan is that in a June 15, 1968 meeting of the trustees it was agreed to have an actuarial consultant investigate the validity of the Reciprocal Agreement. Trial testimony of Chappell.

In any event, the district court found that there were no applications for partial benefits processed under the Reciprocal Agreement prior to 1972. Given this lack of evidence of defendant's practice, the court attached no significance to the proposed 1969 amendment.

Plaintiffs also urge that even if the Fund's present construction of the Reciprocal Agreement is consistent with its terms the trustees' action in changing the method of calculation was so arbitrary and capricious an application of the pension plan rules as to amount to a structural defect in the plan in violation of Section 302(c)(5) of the National Labor Relations Act. 29 U.S.C. § 186(c)(5) (1976). This contention is without merit. The decision to adopt the present method of calculating benefits did not result in discrimination among participants, deprived the plaintiffs of no earned service credits, and was actuarially justified.

The judgment appealed from will be affirmed.