756 F.2d 977
 6 Employee Benefits Ca 1401
 Kenneth HOOVER, Albert Guyton and Alex Guyer
v.
CUMBERLAND, MARYLAND AREA TEAMSTERS PENSION FUND
Joseph Freno, James Hutchinson, William Peterson and William
Lemon, Trustees of Cumberland, Maryland Area
Teamsters Pension Fund
Western Pennsylvania Teamsters and Employers Pension Fund
(withdrawn, see order of 9/17/84)
and
James Beros, Charles M. Byrnes, William M. Gherilla, Walter
Chrzan, John Puskarish, Leslie Breman, Julius R. Casali,
John W. Flanigan, James H. Hutchinson, Jr. and Joseph E.
Zaucha, Trustees of W. Pa. Teamsters and Employers Pension
Fund (withdrawn per order of 9/17/84)
Appeal of Kenneth S. HOOVER, et al., for themselves and the
certified class.
 No. 84-3116.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 4, 1984.
Decided March 19, 1985.
 
 1
 Thomas H. Geoghegan (Argued), Despres, Schwartz & Geoghegan, Chicago, Ill., for appellants.
 
 
 2
 David L. Beck (Argued), Weis & Weis, Pittsburgh, Pa., for appellees, Cumberland, Maryland Area Teamsters Pension Fund; Frederick N. Egler, Jr., Claire A. Kimmel, Egler, Anstandig, Garrett & Riley, Pittsburgh, Pa., of counsel.
 
 
 3
 Charles J. Streiff, Wick, Rich, Fluke & Streiff, Pittsburgh, Pa., for appellees, Western Pennsylvania Teamsters and Employers Pension Fund and its Trustees; Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Richard Farber, Michael J. Roach, Tax Div., Dept. of Justice, Washington, D.C., of counsel.
 
 
 4
 J. Alan Johnson, U.S. Atty., Pittsburgh, Pa., for amicus curiae, The United States.
 
 
 5
 Before ALDISERT, Chief Judge, BECKER, Circuit Judge and CAHN, District Judge.*OPINION OF THE COURT
 
 
 6
 CAHN, District Judge.
 
 
 7
 This is an appeal by plaintiffs, former participants in the Cumberland, Maryland Area Teamsters Pension Fund ("Cumberland Fund"), from a judgment of the United States District Court for the Western District of Pennsylvania holding that the adoption of a plan amendment altering the calculation of partial pension benefits did not violate the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Secs. 1001-1381 (1982).[1] Plaintiffs argue that the plan amendment decreased accrued benefits in contravention of an explicit prohibition set forth in section 204(g) of ERISA, 29 U.S.C. Sec. 1054(g)(1982), as amended by Retirement Equity Act of 1984, Pub.L. No. 98-397, Sec. 301, 98 Stat. 1426, 1451 (1984), and its counterpart in the Internal Revenue Code of 1954, 26 U.S.C. Sec. 411(d)(6)(1982), as amended by Retirement Equity Act of 1984, Pub.L. No. 98-397, Sec. 301, 98 Stat. 1426, 1450 (1984). The district court held that no violation occurred because the partial pension benefits reduced by the amendment are ancillary benefits not protected from diminution or elimination under ERISA. Because we hold that plaintiffs' benefits reduced by the plan amendment are accrued benefits subject to the protection of section 204(g), we reverse as to defendants Cumberland Fund and the individually named trustees of that Fund.[2]
 
 I.
 
 8
 Prior to 1967, plaintiffs worked as truck drivers in the Bedford, Pennsylvania area, and belonged to Local Union 453 of the International Brotherhood of Teamsters. As members of Local 453, they participated in the Cumberland Fund, a multiemployer pension plan established by the local union and employers engaged in collective bargaining with the local. The Cumberland Fund is a qualified plan subject to the vesting, funding, and participation requirements of the Internal Revenue Code of 1954 and ERISA. Starting in 1967, the trucking companies employing plaintiffs began moving their terminals from the Bedford area to Pittsburgh, Pennsylvania, because of changes in interstate highway routes. The drivers affected by these relocations, including plaintiffs, moved with their employers to Pittsburgh. These drivers transferred to Teamsters Local 249, serving the Pittsburgh area, whose members participated in the Western Pennsylvania Teamsters and Employers Pension Fund ("Western Fund"). As a result of the move, these drivers terminated their participation in the Cumberland Fund and joined the Western Fund, although they remained with the same employer and with the same international union.
 
 
 9
 Responding to the disruption in local union jurisdiction and pension fund affiliation, a number of teamster pension funds prepared a reciprocal agreement which the trustees of the Cumberland Fund signed in 1968. The purpose of the reciprocal agreement was to provide full pensions for workers with continuous membership in the international union, but who, because of transfers to different locals, might not accrue sufficient work credit under any one plan to entitle them to full pension benefits.[3] See Bianco v. Board of Trustees of Local 816 Labor and Management Pension Trust, 494 F.Supp. 206, 208 (E.D.N.Y.1980). Under the reciprocal agreement, a union member who transferred from the Cumberland Fund to the Western Fund could cumulate his service credit from each fund, and if his total combined service credit was sufficient on retirement, he would receive proportional pension benefits from each fund. The reciprocal agreement did not specify a particular benefit rate, but rather required each fund to include in its plan documents a method for calculating the partial pensions. The Cumberland Fund Plan accordingly provided a partial pension formula:
 
 
 10
 Article X.
 
 Partial Pensions
 
 11
 Section 10.08 Partial Pension Amount--The amount of the Partial Pension shall be determined as follows:
 
 
 12
 (a) The amount of the pension to which the employee would be entitled under this Plan taking into account his Combined Service Credit shall be determined, then
 
 
 13
 (b) The amount of service credit earned with this Plan since January 1, 1955, shall be divided by the total amount of Combined Service Credit earned by the employee since January 1, 1955, then
 
 
 14
 (c) The fraction so determined in (b) shall be multiplied by the pension amount determined in (a) and the result shall be the Partial Pension Amount payable by this Plan.
 
 
 15
 Under this formula each fund to which contributions have been made pays a partial pension based on service credit for the period of time that an employer made contributions on behalf of a participant.
 
 
 16
 To calculate the amount of the pension referred to in section 10.08(a), a "unit multiplier" in a dollar amount specified in the Plan, is multiplied by the number of years of combined service credit accumulated. The product of this multiplication is then reduced by the fraction derived from section 10.08(b) to determine the partial pension payable by the Cumberland Fund. At the time plaintiffs transferred out of the Cumberland Fund, the unit multiplier applicable in computing plan benefits was $6.00 of pension per month for each year of credited service. Initially, the Cumberland Fund Plan provided for the computation of pensions using the $6.00 unit multiplier rate. On June 13, 1972, the trustees of the Cumberland Fund amended the Plan to increase the unit multiplier used in calculating pensions to the higher of 1) the multiplier in effect at the participant's termination (or transfer) date or 2) the multiplier in effect at the participant's retirement date. Thus, when the unit multiplier increased in 1972, the calculation of partial pensions for drivers retiring thereafter was made with the new $25.00 unit multiplier, rather than the 1967 $6.00 rate.
 
 
 17
 On October 3, 1978, however, the trustees of the Cumberland Fund again amended the Plan. Amendment No. 5, formally adopted on January 18, 1979, changed the method for calculating pension benefits. The amendment provided for calculation of pensions with the unit multiplier in effect on a participant's termination date. Consequently, plaintiffs' partial pensions from the Cumberland Fund would be calculated using the $6.00 unit multiplier in effect on the date of their terminations (transfers), which for plaintiffs occurred before June 13, 1972, instead of the higher rate in effect thereafter.[4] The trustees applied the 1979 amendment retroactively to June 1, 1978.[5]
 
 
 18
 Plaintiffs brought this action, challenging the legality of the 1979 amendment under ERISA.[6] Plaintiffs now appeal from a judgment of the district court that no violation of ERISA occurred. The issue before us is whether the adoption of an amendment changing the method of calculating partial pension benefits under the reciprocal agreement reduced benefits in contravention of section 204(g) of ERISA.[7]
 
 II.
 
 19
 Section 204(g) unequivocally states that the "accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section [302(c)(8) ]." 29 U.S.C. Sec. 1054(g)(1).[8] Thus, the focus of our inquiry is whether the partial pension benefits involved here qualify as accrued benefits within the meaning of that term under ERISA. ERISA's statutory definition of "accrued benefit" imparts a specific meaning to the word accrued, connoting a set periodic increase or accumulation. Section 3(23) states that an accrued benefit is an individual's benefit "expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. Sec. 1002(23)(A). ERISA's definitional counterpart for accrued benefit in the Internal Revenue Code, 26 U.S.C. Sec. 411(a)(7)(A)(i), is identical, and has been interpreted by the Internal Revenue Service in a Technical Information Release:
 
 
 20
 [I]n the case of a defined benefit plan, the "accrued benefit" must be expressed in the form of an annual benefit commencing at normal retirement age. The plan must provide a formula under which each participant's actual accrued benefit under the plan can be determined in each plan year.
 
 
 21
 Internal Revenue Service T.I.R. No. 1403 (Sept. 17, 1975).[9] An accrued benefit, then, represents the interest in a retirement benefit that a participant earns each year, and a plan must state a method or formula for determining a participant's annual accrual rate.[10] This requirement enables a worker to mark his or her progress toward the full pension benefit due at retirement.
 
 
 22
 A reading of both the Cumberland Fund Plan and the legislative history of ERISA leads us to conclude that plaintiffs' partial pension benefits satisfy ERISA's definition of accrued benefit. Plaintiffs' benefits are annual benefits that are payable at normal retirement age. The Cumberland Fund Plan describes plaintiffs' benefits in terms of a formula, comprising the unit multiplier and the accumulated years of service credit, under which each employee can determine how much benefit has accrued at any given time. In Amendment No. 5, the Cumberland Fund Plan itself labels a benefit earned under the reciprocal agreement an "accrued benefit." Indeed, both full pension benefits and the partial pension benefits, required by the reciprocal agreement, are calculated in accordance with Amendment No. 5 under the heading "accrued benefits."
 
 
 23
 The legislative history of ERISA's benefit accrual provisions reveals that Congress similarly intended the statute's accrual requirements to govern all retirement benefits provided by a pension plan which commence at normal retirement age. The House Conference Report states flatly: "Under the conference substitute, the term 'accrued benefit' refers to pension or retirement benefits." H.R.Conf.Rep. No. 1280, 93d Cong.2d Sess., reprinted in 1974 U.S. Code Cong. & Ad. News 4639, 5038, 5054. This category of benefits, the Report notes, contains benefits that are generally not transferable when an employee changes jobs and pension plans.[11]
 
 
 24
 The House Conference Report then contrasts accrued benefits with certain "ancillary" benefits sometimes available to employees.
 
 
 25
 The term [accrued benefit] does not apply to ancillary benefits, such as payment of medical expenses (or insurance premiums for such expenses), or disability benefits which do not exceed the normal retirement benefit payable at age 65 to an employee with comparable service under the plan, or to life insurance benefits payable as a lump sum.
 
 
 26
 Also, the accrued benefit does not include the value of the right to receive early retirement benefits, or the value of social security supplements or other benefits under the plan which are not continued for any employee after he has attained normal retirement age.
 
 
 27
 Id. Plaintiffs' benefits, which serve the primary function of providing retirement income, are not comparable to these types of specialized payments.[12] Plaintiffs' benefits cannot be characterized as "ancillary" simply because they provide partial rather than full benefits.[13]
 
 
 28
 The Cumberland Fund mistakenly relies on Petrella v. NL Industries, Inc., 529 F.Supp. 1357 (D.N.J.1982), which involved ancillary benefits. At issue in Petrella were early retirement benefits originally available to employees "at the convenience of the company." Id. at 1360. The court in Petrella held that the subsequent elimination of the early retirement option did not violate ERISA because the benefits were not accrued benefits subject to the prohibition against reduction, nor were they vested benefits protected against forfeiture. Id. at 1366. The court specifically noted, however, that the employer acted to insure receipt of all accrued pension benefits as defined in section 1002(23)(A) of ERISA, id. at 1360-61, distinguishing benefits payable before normal retirement age, which were provided at the option of the employer and could be changed without violating ERISA. See also Sutton v. Weirton Steel Division of National Steel Corporation, 724 F.2d 406, 410 (4th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984) (distinguishing accrued benefits from early retirement benefits); see also H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess. 273, reprinted in 1974 U.S.Code Cong. & Ad. News 5038, 5054 ("the accrued benefit does not include the value of the right to receive early retirement benefits"). Plaintiffs' benefits here are not analogous to contingent benefits available at the employer's option, such as the receipt of a reduced pension at an early age, and certain health or life insurance benefits.
 
 
 29
 The Cumberland Fund, in urging that plaintiffs' benefits are ancillary benefits, confuses the concept of "accrued" with that of "vested." Correctly noting that some plaintiffs had no vested right to pension benefits at the time of their transfer, defendants mistakenly equate vested with accrued, and contend that no reduction of "vested-accrued" benefits occurred. Congress, however, distinguished the two terms in drafting ERISA. The concepts of accrued on the one hand, and vested or "nonforfeitable",[14] on the other, are related, but not the same. A participant becomes fully vested when he gains a nonforfeitable right to receive his entire accrued benefit.[15] Vesting provisions do not affect the amount of the accrued benefit, but rather govern whether all or a portion of the accrued benefit is nonforfeitable. Accrual provisions provide a formula for calculating the amount of the normal retirement benefit which an employee has earned at any given time. See Stewart v. National Shopmen Pension Fund, 730 F.2d 1552, 1561-62 (D.C.Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 127, 83 L.Ed.2d 68 (1984). The United States Supreme Court has recognized the statutory distinction between the two concepts, noting that the term nonforfeitable described "the quality of the participant's right to a pension rather than a limit on the amount he may collect." Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 373, 100 S.Ct. 1723, 1732, 64 L.Ed.2d 354 (1980).
 
 
 30
 Section 204(g) of ERISA protects all accrued benefits from reduction by plan amendment, vested or not, and without regard to whether benefits are currently being paid to a participant who has already retired. The House Conference Report states specifically that "no plan amendment may retroactively reduce the accrued benefit of any participant (whether or not vested)." H.R.Conf.Rep. No. 1280, Joint Explanatory Statement of the Committee of Conference, reprinted in 1974 U.S.Code Cong. & Ad.News 5038, 5053 (emphasis added). In adopting Amendment No. 5 in 1979, the Cumberland Fund trustees reduced the pension benefits of the plaintiffs, which were accrued, although in some cases not fully vested, and in so doing violated section 204(g) of ERISA.
 
 III.
 
 31
 Defendants complain that application of section 204(g) to the benefit reduction in this case would have an unreasonable and harsh result. The Cumberland Fund argues that the trustees' action was justified because under the 1979 amendment plaintiffs would receive pension benefits based on levels of employer contributions several times higher than the rate of contributions actually received by the Cumberland Fund while plaintiffs were active participants. This situation, defendants suggest, threatened to bankrupt the Fund. Plaintiffs respond that this argument ignores the fact that, between 1967 and 1979, the employee contributions were presumably reinvested and had increased in value. Plaintiffs further contend that the Cumberland Fund had available at least four alternative methods for solving its financial problems.
 
 
 32
 We need not resolve the questions of the seriousness of the Fund's financial condition or the appropriateness of the trustees' action vis-a-vis other possible options. Section 204(g) flatly prohibits reductions of accrued benefits. The single exception is provided by section 302(c)(8), under which the Secretary of the Treasury may grant a request to amend benefit amounts within specified limits on a finding that the amendment is necessary to preserve the fund and a simple waiver of ERISA's minimum funding standards would not solve the problem.[16] Rather than comply with this procedure, the trustees unilaterally effected a retroactive elimination of a benefit increase adopted six years earlier. In neglecting to avail themselves of section 302(c)(8), defendants cannot now complain of their financial straits. ERISA does not authorize this court's exercise of discretion in the matter.
 
 IV.
 
 33
 Defendants further dispute the applicability of section 204(g) here by asserting that ERISA permits the parties to a pension plan to control the level of benefits payable under the plan. To support this assertion, defendants rely on Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), in which the United States Supreme Court considered vested (or nonforfeitable) benefits, and noted that the "statutory definition of 'nonforfeitable' assures that an employee's claim to the protected benefit is legally enforceable, but it does not guarantee a particular method for calculating the benefit." Id. at 512, 101 S.Ct. at 1900. The Alessi Court's discussion of nonforfeitable benefits does not, however, support defendants' assertion. The fact that parties to a pension plan are required to utilize a vesting formula to determine to what extent accrued benefits are nonforfeitable does not undercut either ERISA's proscription of accrued benefit reductions or section 204(g)'s applicability. While parties to a pension plan may freely set the amount of benefits due employees at normal retirement, once set, a plan amendment reducing any accrued benefits would contravene section 204(g). In other words, "the accrued benefit is to be determined under the plan, subject to certain requirements," H.R.Conf.Rep. No. 1280, 93d Cong.2d Sess. reprinted in 1974 U.S.Code Cong. & Ad.News 5038, 5054 (emphasis added), one of which is that accrued benefits not be reduced by a subsequent plan amendment.
 
 
 34
 Moreover, the Supreme Court's holding in Alessi and its reasoning in support thereof buttress our conclusion that the plaintiffs' benefits under the Cumberland Fund Plan are accrued benefits protected under ERISA. In Alessi, the Court permitted the offset of workers' compensation payments against benefits otherwise payable under the plan. The Court specifically noted, however, that offsets for benefits payable under other state or federal laws had been authorized by pre-ERISA Treasury Regulations and that, in two published Revenue Rulings issued prior to ERISA's enactment, the Internal Revenue Service had expressly approved the reduction of pension payments by the amount of workers' compensation awards. Because of the prior administrative practice of allowing offsets for workers' compensation awards, the Court found that Congress would have expressly prohibited such offsets in ERISA if it had wanted to eliminate them.
 
 
 35
 Congress did, of course, expressly prohibit the retroactive reduction of accrued benefits in enacting section 204(g) of ERISA. Moreover, the Department of Treasury had never authorized retroactive reductions in accrued benefits, as it had the compensation offset in Alessi. The absence of legislative or administrative approval of such reductions reflects the dissimilarity between retroactive reductions of pension benefits by plan amendment and the offset of workers' compensation payments. The Alessi Court compared the offset of workers' compensation payments to the integration of Supplemental Social Security or Railroad Retirement payments with pension benefits. In such cases, the "individual employee remains entitled to the established pension level, but the payments received from the pension funds are reduced by the amount received [from the other source]." 451 U.S. at 516, 101 S.Ct. at 1903. Plaintiffs' accrued benefits are unlike social security supplements or other ancillary benefits incidental to a full pension benefit. Plaintiffs draw their pensions proportionally from each pension fund in which they participated. In reducing its percentage share, the Cumberland Fund Plan amendment denies plaintiffs a full pension, not an extra supplement.
 
 V.
 
 36
 The protection of retirement benefits reflects the underlying policy goals of ERISA. Congress's chief purpose in enacting the statute was to ensure that workers receive promised pension benefits upon retirement. Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980). In constructing ERISA, Congress perceived the statute's accrual and vesting provisions as the heart of the protection.
 
 
 37
 Unless an employee's rights to his accrued pension benefits are nonforfeitable, he has no assurance that he will ultimately receive a pension. Thus, pension rights which have slowly been stockpiled over many years may suddenly be lost if the employee leaves or loses his job prior to retirement. Quite apart from the resulting hardships, ... such losses of pension rights are inequitable, since the pension contributions previously made on behalf of the employee may have been made in lieu of additional compensation or some other benefit which he would have received.
 
 
 38
 S.Rep. No. 383, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 4890, 4930. The result reached here serves the statutory purpose as envisioned by Congress. A plan amendment that retroactively reduces benefits promised to plaintiffs for almost seven years is precisely the sort of inequity Congress designed ERISA to prevent. The Cumberland Fund Plan amendment reduced by seventy-five percent the partial pension benefits earmarked for plaintiffs under the Plan's accrual formula. At the same time, plaintiffs' co-workers who remained with the Cumberland Fund still receive pensions based on the $25.00 unit multiplier. The 1979 amendment deprived plaintiffs of the secure retirement income earned during their working prime. In enacting ERISA, Congress proscribed pension fund amendments which cause this type of loss by reducing accrued benefits absent extreme circumstances and governmental approval.
 
 VI.
 
 39
 The judgment of the court below will be reversed as to defendants Cumberland, Maryland Area Teamsters Pension Fund and the individually named trustees thereof, and the within case will be remanded for proceedings consistent with this opinion.
 
 
 
 *
 Honorable Edward N. Cahn, of the United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The district court, on March 15, 1983, certified this case as a class action on behalf of all drivers employed by the Interstate Motor Freight Company or the Cooper-Jarrett Company who transferred from the Bedford Area Teamsters Local 453 to the Pittsburgh Area Teamsters Local 249 between 1967 and 1972
 This court has previously examined the Cumberland Fund Plan in Kagarise v. Cumberland, Maryland Area Teamsters Pension Fund, 661 F.2d 19 (3d Cir.1981). The parties in Kagarise did not raise the issue now presented, nor did this court consider the issue in its opinion. As a result, the Kagarise decision is not controlling here. In addition, because plaintiffs were not parties to the Kagarise action, they would not be precluded under res judicata or collateral estoppel principles from raising the statutory violation alleged in the present action. See Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597-99, 68 S.Ct. 715, 719-20, 92 L.Ed. 898 (1948); Hubicki v. ACF Industries, Inc., 484 F.2d 519, 524 (3d Cir.1973).
 
 
 [2]
 Defendants Western Pennsylvania Teamsters and Employers Pension Fund and the individually named trustees thereof were withdrawn as parties to this appeal by order dated September 17, 1985
 
 
 [3]
 The reciprocal agreement signed by the Cumberland Fund trustees states that "Partial Pensions are provided under this Plan for employees who would otherwise lack sufficient service credit to be eligible for any pension because their years of employment were divided between different pension plans or, if eligible, whose pensions would be less than the full amount because of such division of employment."
 
 
 [4]
 The amendment changed the calculation of pension benefits by providing, for the first time, a definition of "accrued benefits" which stated that the benefit would be determined by the formula in effect on the participant's termination date. Prior to adoption of this amendment, the Cumberland Fund Plan contained no definition of accrued benefits, and all pension benefits based on service credit were determined by a formula set out in Article III of the Plan. Under the 1979 amendment, full pension benefits and partial pension benefits under the reciprocal agreement are calculated by the new formula set out under the heading "accrued benefit."
 
 
 [5]
 The 1979 amendment did not affect the partial pensions of drivers who retired after June 13, 1972 and before June, 1978. Because these drivers continue to receive benefits computed with the $25.00 rate applicable at the time of their retirement, they are not parties to this class action
 
 
 [6]
 The district court had jurisdiction under ERISA, 29 U.S.C. Sec. 1132(e) and (f)(1982)
 
 
 [7]
 Because of our holding that the amendment violated Sec. 204(g) of ERISA, we do not address whether the trustees of the Cumberland Fund breached their fiduciary duty in any manner in approving the 1979 amendment
 
 
 [8]
 The type of amendment described in Sec. 302(c)(8) is specifically limited:
 No amendment described in this paragraph which reduces the accrued benefits of any participant shall take effect unless the plan administrator files a notice with the Secretary [of Treasury] notifying him of such amendment and the Secretary has approved such amendment or, within 90 days after the date on which such notice was filed, failed to disapprove such amendment. No amendment described in this subsection shall be approved by the Secretary unless he determines that such amendment is necessary because of a substantial business hardship (as determined under section [303(b) ] and that waiver under section [303(a) ] is unavailable or inadequate.
 29 U.S.C. Sec. 1082(c)(8). The Secretary is authorized to grant permission for amendments reducing the benefit amounts only if it is shown that the amendment is necessary to preserve the fund, and if a simple waiver of ERISA's minimum funding standards, set out in Sec. 302, 29 U.S.C. Sec. 1082, would not solve the fund's problems. See 29 U.S.C. Sec. 1083(b). The trustees of the Cumberland Fund Plan made no effort to comply with the requirements of Sec. 302(c)(8).
 
 
 [9]
 The Cumberland Fund Plan is a defined benefit plan under 29 U.S.C. Sec. 1002(35), which provides in part that the "term 'defined benefit plan' means a pension plan other than an individual account plan."
 
 
 [10]
 As a defined benefit plan, the Cumberland Fund Plan must accrue benefits for each active employee at a minimal accrual rate specified by statute, 29 U.S.C. Sec. 1054. ERISA contains three accrued benefits tests, each of which specifies how much of the benefit payable at normal retirement age must accrue each year. 29 U.S.C. Sec. 1054(b)(1)(A), (B), and (C). A defined benefit plan must satisfy one of these three tests. These tests prevent an employer from avoiding the vesting requirements through minimal accrual of benefits in early years of employment, followed by larger benefit accruals as an employee nears retirement. Congress designed ERISA to prevent this practice, known as "backloading of benefits", whereby an employee who for some reason does not continue employment until normal retirement age becomes vested only as to a minimal amount of accrued benefits
 
 
 [11]
 "[W]here the employee moves from one employer to another, the ancillary benefits (which are usually on a contingent basis) would often be provided by the new employer, whereas the new employer normally would not provide pension benefits based on service with the old employer." S.Rep. No. 383, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 4890, 4935
 
 
 [12]
 We note that in Shaw v. International Association of Machinists & Aerospace Workers Pension Plan, 750 F.2d 1458 (9th Cir.1985), the United States Court of Appeals for the Ninth Circuit similarly held that a "living pension feature" of a pension plan was an accrued benefit under ERISA because it was a retirement benefit, it was expressed in terms of a formula set out in the plan, and it was not transferable from one employer to another. For these reasons, the court found that the feature "fits more easily within the enumeration of accrued" rather than ancillary benefits. Id. at 1463-64
 
 
 [13]
 Defendants support their argument that the benefits in question here are ancillary benefits by citing the following language from the House Report:
 [The] accrued benefit to which vesting rules apply is not to include such items as the value of the right to receive benefits commencing at an age before normal retirement age.
 H.R.Rep. No. 807, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 4670, 4726. Plaintiffs' partial pension benefits commence at, not before, normal retirement age. The fact that plaintiffs ended their participation in the Cumberland Fund prior to reaching normal retirement age did not alter the date on which they became eligible to receive their pension benefits. The language quoted above refers to early retirement benefits provided by some plans, under which an employee who opts for early retirement receives benefits before reaching normal retirement age. It should be noted that Sec. 1054(g), as amended by Congress in August 1984, now includes early retirement benefits within the group of accrued benefits protected from unauthorized reductions. 29 U.S.C. Sec. 1054(g)(1982), as amended by Retirement Equity Act of 1984, Pub.L. No. 98-397, Sec. 301, 98 Stat. 1426, 1451 (1984).
 
 
 [14]
 Congressional reports and debates use "vested" interchangeably with the term "nonforfeitable." See Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 367, 100 S.Ct. 1723, 1729, 64 L.Ed.2d 354 (1980). The statutory definition of "nonforfeitable" is as follows:
 The term "nonforfeitable" when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan.
 29 U.S.C. Sec. 1002(19)(1982).
 
 
 [15]
 ERISA provides that a pension plan must specify a vesting schedule, subject to the minimum vesting requirements of Sec. 203(a), 29 U.S.C. Sec. 1053(a), which determines when an employee's right to receive his accrued benefit becomes nonforfeitable. A participant may be only partially vested depending upon percentages expressed in a plan's vesting schedule
 
 
 [16]
 See supra note 8