

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-2000

# Smith v. Contini

Precedential or Non-Precedential:

Docket 99-5293

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Smith v. Contini" (2000). *2000 Decisions.* Paper 49.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/49

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 9, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5293

STANLEY SMITH,

      Appellant

v.

ROBERT CONTINI; JOHN BARNES; JOHN
KROMMENHOEK; RICHARD MULLER; JERRY
MCCORMICK; LAWRENCE MCDERMOTT; JOHN DOE
(name being fictitious); TEAMSTERS LOCAL 641 PENSION
FUND; PETER VAN LENTEN; ROBERT CIRONE, as
Trustee of the Teamsters Local 641 Pension Fund;
THOMAS FLANNERY, Trustee of the Teamsters Local 641
Pension Fund

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 97-2692)
District Judge: Hon. William H. Walls

Argued January 25, 2000

BEFORE: GREENBERG, ROTH, and ROSENN,
Circuit Judges

(Filed: March 9, 2000)

      David Tykulsker (argued)
      David Tykulsker & Associates
      161 Walnut Street
      Montclair, NJ 07042

       Attorneys for Appellant

      Gary A. Carlson (argued)
      Lynch Martin Kroll
      300 Executive Drive, Suite 010
      West Orange, NJ 07052

       Attorneys for Appellees

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

This matter is before the court on an appeal by Stanley Smith in this Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. SS 1001 et seq., benefits case.1 Smith filed a complaint in the district court on May 23, 1997, after the defendants denied him retirement benefits. Smith asserted that defendants' construction of the pension plan they managed violated ERISA, and thus he brought this action seeking an injunction and other appropriate equitable relief to bring their construction of the plan into compliance with the statute. Of course, his ultimate goal is to obtain a pension.

The Teamsters Local 641 Pension Fund (the "Local 641 Fund") plan is a multiemployer, defined benefits pension plan within the meaning of 29 U.S.C. S 1002(2)(A)(37). The individual defendants are trustees and officers of the Local

_____

1. The district court exercised jurisdiction pursuant to 28 U.S.C. S 1331 and 29 U.S.C. S 1132(e)(1) and (f). We have jurisdiction pursuant to 28 U.S.C. S 1291. The defendants assert that the case is not ripe for appellate review because the district court granted summary judgment "dismissing the complaint" and not dismissing the action. See Appellee Br. at 12 (citing Newark Branch, N.A.A.C.P. v. Harrison, 907 F.2d 1408, 1416 (3d Cir. 1990)). While it is true that the dismissal of a complaint without prejudice in some circumstances may not be afinal and appealable order because a court can grant leave to amend a complaint even after dismissal, see id. at 1416, in this case the district court did not dismiss the complaint without prejudice and it did not grant leave to amend. Moreover, Smith has stood on his complaint. See Shapiro v. UJB Fin. Corp., 964 F.2d 272, 278 (3d Cir. 1992). Thus, we have jurisdiction.

2

641 Fund who, by virtue of their positions, owe afiduciary duty to Smith and the other beneficiaries of the Local 641 Fund plan.

The Local 641 Fund plan provides an array of retirement benefits to employees covered by the plan. As is relevant herein, the Local 641 Fund pension plan provides for two types of benefits to covered employees upon their reaching their normal retirement age. The first, a "Deferred Pension," is available to employees who accumulate at least ten years of vesting service under the Local 641 Fund. See Local 641 Fund plan S 3.15, app. at 27. The second, a"Pro-rata Pension," is available to certain employees who have been members of other Teamsters locals, but did not attain a minimum of ten years of employment with employers within the jurisdiction of the Local 641 Fund so as to qualify for

a Deferred Pension. The Local 641 Fund entered into reciprocal agreements with the pension funds of other locals to provide for Pro-rata Pensions to certain employees who then could accumulate service credits in more than one fund so as to qualify for a pension.

With respect to its Pro-rata Pension provisions, the Local 641 Fund plan provides:

> The Fund has a number of reciprocal agreements with other pension funds under which service in the jurisdiction of any of the reciprocating funds is considered as service under this Fund for the purpose of determining eligibility for benefits under the Fund.
>
> * * * *
>
> If an employee would meet the eligibility rules under this Plan if his Related Credit was considered, but does not meet the eligibility rules of the last Fund in whose jurisdiction he worked, a Pro-rata pension based on the time worked under this Plan only will be payable even if the Employee has less than 10 Pension Credits under this Plan.

Local 641 Fund plan S 3.21, app. at 28.

Generally, the Local 641 Fund plan calculates a Pro-rata Pension based on the amount of the pension to which an employee would have been entitled under the Local 641

Fund plan if he had earned all of his combined pension credits under the jurisdiction of the Fund. See Local 641 Fund plan, Addendum A, app. at 37. The Local 641 Fund then pays a pro-rata share, or percentage, of the pension to the employee that equals the percentage of the combined pension credits earned by the employee within the jurisdiction of the Local 641 Fund. See id.2 Under this plan, however, a Pro-rata Pension generally is paid only to those employees who had earned a minimum of 15 years of combined service credits. See id. at 28.

As is relevant here, the Local 641 Fund maintains reciprocal agreements with the Teamsters Local 202 Fund and the Teamsters Local 816 Fund. Under these agreements, the Local 641 Fund agreed to apply service credits earned by employees with the Local 202 and 816 Funds toward service credits earned in the Local 641 Fund plan.

Smith, who was employed as a truck driver, earned two

quarters of service credits with the Local 202 Fund between May and December 1966. From February of 1967 through December of 1973, Smith was employed by Eastern Express, Inc. ("Eastern Express") in New York City, earning 26 quarters of service credits with the Local 816 Fund. Then Eastern Express moved to Elizabeth, New Jersey, and its employees came under the jurisdiction of the Local 641 Fund. Smith, whom Eastern Express continued to employ after the move, earned 16 quarters of service credits with the Local 641 Fund between January 1974 and May 1977.

Pursuant to its reciprocal agreements with the Local 202 and 816 Funds, the Local 641 Fund accepted the service credits Smith had earned within the jurisdiction of those funds. Thus, when Smith terminated his covered employment in 1977, he had earned a total of 44 service credits (the equivalent of 11 years) -- 42 service credits (ten and one-half years) as an Eastern Express employee.

On November 11, 1993, Smith, having turned 65, applied for a pension from the Local 641 Fund. By letter dated

_____

2. Apparently the employee obtains the full pension from all of the funds, but we are not certain as to the mechanics of the program.

4

June 21, 1994, the Local 641 Fund acknowledged that Smith had earned 11 years of service credits, but informed him that he needed 15 years of service credits before he could receive pension benefits. See id. at 85. Smith appealed this decision on the ground that the Fund could require only ten, not 15, years of service before an employee was guaranteed pension benefits. The Fund denied Smith's appeal by a letter dated September 22, 1994. See id. at 86.

Smith then brought this suit in the district court under 29 U.S.C. S 1132(a)(3), alleging that the defendants' adherence to the 15-year service credit requirement was contrary to ERISA and constituted a breach of their fiduciary duty. In particular, Smith sought a declaration that the defendants had breached their fiduciary duties and an order enjoining them to conform the rules and regulations of the Local 641 Fund plan to ERISA's maximum ten-year vesting requirement. See app. at 7. He also sought restitution by the award of a pension.

Ultimately, after proceedings that we need not describe, the parties filed cross-motions for summary judgment. By an opinion and order dated April 8, 1999, the district court denied Smith's motion but granted the defendants' motion. See Smith v. Contini, No. 97-2692 (D.N.J. Apr. 8, 1999). In

its opinion, the district court examined the Local 641 Fund's pension plan and determined it complied with ERISA guidelines. The court noted that the ERISA provision Smith thought applicable to this case, 29 U.S.C. S 1053(a)(2)(A), required plans to provide that an employee's right to his normal retirement benefit be nonforfeitable upon the attainment of his normal retirement age, provided that the employee have at least ten years of qualifying service. See id. at 9-10. But the court determined that the Deferred Pension offered by the Local 641 Fund plan complied with ERISA's vesting provisions. See id. at 10 -11.

The district court also noted that the Local 641 Fund plan provided a pension for those employees who had performed less than ten years of vesting service within the jurisdiction of the Local 641 Fund, but who had accumulated service credits with a reciprocating fund. See id. But under the reciprocal pension, an employee would not receive any benefits unless he had a minimum of 15

5

years of combined service within the jurisdiction of the various reciprocating funds. See id. It is undisputed that Smith did not meet that threshold.

The district court concluded that the Pro-rata Pension offered by the Local 641 Fund pursuant to its reciprocity agreements with other funds was not governed by ERISA's ten-year vesting requirements. See id. at 11. The court stated:

> Defendants are correct in their argument that ERISA does not require them to provide pro-rata pensions or reciprocal agreements with other funds. Under 29 U.S.C. S 1053(b)(1), defendants may disregard years of service performed for an employer during a period in which that employer did not maintain a pension plan with the Local 641 Fund or a predecessor plan. The pro-rata provisions in the Local 641 Fund's pension plan do not violate the vesting requirements of ERISA, 29 U.S.C. S 1053(a)(2). Because neither the pro-rata provisions nor the vesting schedule of the Local 641 Fund's pension plan violate ERISA, defendants' motion for summary judgment to dismiss the complaint is granted.

Id. at 11.

In addition to contending that the Pro-rata Pension was subject to a ten-year maximum vesting requirement, Smith argued that the Local 641 Fund should recognize his ten and one-half years of service with Eastern Express as

vesting service under its plan, thereby entitling him to a Deferred Pension. The district court found that "[a]lthough plaintiff 's argument may have merit, the Court may not consider it at this point because it deals with the application of the terms of the pension plan to plaintiff, not whether the terms of the pension violate ERISA. The Court may not consider this argument unless and until plaintiff brings an action under 29 U.S.C. S 1132(a)(1)(B) to challenge his denial of benefits under the Local 641 Fund's pension plan." See id. at 12. Smith appeals.

II. DISCUSSION

We exercise plenary review with respect to the district court's decision on the cross-motions for summary

judgment. See Seibert v. Nusbaum, Stein, Goldstein, Bronstein & Compeau, 167 F.3d 166, 170 (3d Cir. 1999); Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993). We will affirm only if we conclude that the pleadings, depositions, answer to interrogatories and admissions on file, together with the affidavits, show that the defendants were entitled to judgment as a matter of law on the basis of the undisputed facts. See Fed. R. Civ. P. 56(c).

We start our discussion of the issues by recognizing that ERISA neither mandates the creation of pension plans nor in general dictates the benefits to be afforded once a plan is created. See Dade v. North American Philips Corp., 68 F.3d 1558, 1561 (3d Cir. 1995) (citing Hlinka v. Bethlehem Steel Corp., 863 F.2d 279, 283 (3d Cir. 1988); H.R. Rep. No. 93-807, 93d Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 4670, 4677). Thus, ordinarily only the plan can create an entitlement to benefits. Consequently, "we are required to enforce the Plan as written unless we can find a provision of ERISA that contains a contrary directive." Dade, 68 F.3d at 1562.

One of the areas in which ERISA requires express provisions in benefit plans concerns the nonforfeitability, often referred to as "vesting," of normal retirement benefits[3] payable to an employee who reaches the normal retirement age.[4] In this regard, ERISA section 203(a), 29 U.S.C. S 1053(a), provides in relevant part:

> Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in

_____

3. ERISA defines normal retirement benefits as "the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age." 29 U.S.C.S 1002(22).

4. ERISA allows the normal retirement age to be defined by the plan or sets the age as the later of the time a plan participant reaches the age of 65 or reaches his or her fifth anniversary of participation in the plan.

See 29 U.S.C. S 1002(24). The parties do not dispute that Smith had attained the normal retirement age at the time he requested benefits under the Local 641 Fund.

7

> addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.
>
> (1) A plan satisfies the requirements of this pa ragraph if an employee's rights in his accrued benefit derived from his own contributions are nonforfeitable.
>
> (2) A plan satisfies the requirements of this pa ragraph if it satisfies the requirements of subparagraph (A), (B), or (C).
>
> (A) A plan satisfies the requirements of this subparagraph if an employee who has completed at least 10 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions.5

The minimum vesting standards to which an employee benefit plan is obligated to adhere are based upon "years of service" as defined in ERISA section 203(b)(1). That section provides:

> In computing the period of service under the plan for purposes of determining the nonforfeitable percentage under subsection (a)(2) of this section, all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account, except that the following may be disregarded:
>
> * * * *
>
> (C) years of service with an employer during any period for which the employer did not maintain the plan or a predecessor plan, defined by the Secretary of the Treasury

29 U.S.C. S 1053(b)(1).

Defendants successfully argued in the district court that
the Pro-rata Pension provided by the Local 641 Fund plan
to an employee who had not earned the requisite ten years
of service credit under its plan was not subject to the

_____

5. The ten-year vesting requirement we set forth reflects the version of
ERISA section 203 in effect at all times relevant to the instant appeal.
Because the Local 641 Fund plan was ratified before March 1, 1986, the
parties agree that the current vesting limits do not apply.

ERISA ten-year vesting requirement even though the
employee overall had more than ten years of service credits.
Thus, they assert on this appeal that "ERISA's minimum
vesting standards [i.e., 29 U.S.C. S 1053] do not apply to
pro-rata pension benefits." See Appellees Br. at 24. In
support of this argument, defendants cite ERISA section
203(b)(1)(C), 29 U.S.C. S 1053(b)(1)(C), quoted above, for the
proposition that years of service earned under other plans
may be disregarded for the purposes of vesting. See id. at
19-20.

While we seem not to have had the opportunity to
address the specific question presented on this appeal, in
Hoover v. Cumberland, Maryland Area Teamsters Pension
Fund, 756 F.2d 977 (3d Cir. 1984), in an analysis
instructive here, we did consider whether pro-rata pensions
were subject to other limitations imposed by ERISA. In
Hoover, the plaintiffs, as members of Teamsters Local 453,
participated in the Cumberland Fund, a multiemployer
pension plan established by the local union and employers
engaged in collective bargaining with the local. See id. at
979. The Cumberland Fund was a qualified plan subject to
the vesting, funding, and participation requirements of the
Internal Revenue Code of 1954 and ERISA. See id.  Starting
in 1967, the trucking companies employing the plaintiffs
began moving their terminals to Pittsburgh, Pennsylvania,
because of changes in interstate highway routes. See id.
The drivers affected by these relocations, including the
plaintiffs, moved with their employers to Pittsburgh and
transferred to Teamsters Local 249 whose members
participated in the Western Pennsylvania Teamsters and
Employers Pension Fund (the "Western Fund"). As a result
of the move, these drivers terminated their participation in
the Cumberland Fund and joined the Western Fund,
although the same company continued to employ them and
they remained members of the same international union.
See id.

Responding to the disruption in local union jurisdiction
and pension fund affiliation, a number of teamster pension

funds prepared a reciprocal agreement which the trustees
of the Cumberland Fund signed in 1968. See id.  The
purpose of the reciprocal agreement was to provide full

pensions for workers with continuous membership in the
international union, but who, because of transfers to
different locals, might not accrue sufficient work credit
under any one plan to entitle them to full pension benefits.
See id. at 979-80. Under the reciprocal agreement, a union
member who transferred from the Cumberland Fund to the
Western Fund could cumulate his service credit from each
fund, and if his total combined service credit was sufficient
on retirement, he would receive proportional pension
benefits from each fund. See id. at 980. The reciprocal
agreement did not specify a particular benefit rate, but
rather required each fund to include in its plan documents
a method for calculating the partial pensions. See id. The
trustees of the Cumberland Fund triggered the dispute in
Hoover by amending the plan in a way that reduced the
pensions payable from the level in effect prior to the
amendment.

In response to the amendment, the Hoover plaintiffs
brought their suit alleging violations of ERISA section
204(g), 29 U.S.C. S 1054(g). See Hoover , 756 F.2d at 981.
Section 204(g) states that the "accrued benefit of a
participant under a plan may not be decreased by an
amendment of the plan, other than an amendment
described in section [302(c)(8)]." 29 U.S.C. S 1054(g)(1)
(emphasis added). Thus, we indicated in Hoover  that "the
focus of our inquiry is whether the partial pension benefits
[under the reciprocal agreement involved in that case]
qualif[ied] as accrued benefits within the meaning of that
term under ERISA" so that section 204(g) precluded their
reduction. See Hoover, 756 F.2d at 981.

A reading of both the Cumberland Fund plan and the
legislative history of ERISA led us to conclude that the
plaintiffs' partial pension benefits earned pursuant to
reciprocity clauses satisfied ERISA's definition of an
accrued benefit. See id. at 982. Accordingly, we determined
that pension benefits provided pursuant to the reciprocity
agreements were subject to the section 204(g) amendment
limitations. See id. It was inherent in our determination
that the benefits provided pursuant to the reciprocity
agreements were provided under a covered plan for
purposes of ERISA because the restriction in ERISA section

204(g), 29 U.S.C. S 1054(g), is only on amendments of a plan as ERISA defines that term.

ERISA section 203(a) is similar to the ERISA provision at issue in Hoover because it sets forth nonforfeitability requirements for pension plans. See 29 U.S.C. S 1053(a). As in Hoover, we hold that the benefits provided to employees pursuant to the Pro-rata Pension provisions of the Local 641 Fund plan are provided in a pension plan within the meaning of ERISA. See 29 U.S.C. S 1002(2)(A) (defining pension plan as any plan, fund or program that provides retirement income to employees regardless of the method of calculating contributions, benefits or method of distributing benefits). Accordingly, the Pro-rata Pension is subject to the vesting requirements set forth in ERISA section 203 and thus an employee must be provided with a nonforfeitable right to his normal retirement benefit if the employee has completed ten years of service. See ERISA section 203(a)(2)(A), 29 U.S.C. S 1053(a)(2)(A).

Defendants' argument that the vesting requirements of ERISA are not applicable here because the Local 641 Fund was not required to provide its employees with a Pro-rata Pension is misplaced. As we mentioned, a plan is not required to provide any particular benefits to its employees and thus the ERISA provisions become applicable only after benefits are provided. See Dade, 68 F.3d at 1562. The Pro-rata Pension provision here seeks to provide normal retirement benefits to plan participants who reach normal retirement age. ERISA sets forth clear vesting requirements for the provision of such benefits. See ERISA section 203(a), 29 U.S.C. S 1053(a).

Defendants argue, however, that even if ERISA section 203(a) is found to be applicable, section 203(b)(1)(C) allows the Local 641 Fund to disregard service with an employer for any period in which the employer did not maintain the Local 641 Fund plan. We reject this argument. The underlying policy goal of ERISA is the protection of retirement benefits. Congress's chief purpose in enacting the statute was to ensure that workers receive promised pension benefits upon retirement. See Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 375, 100 S.Ct. 1723, 1733 (1980). In constructing ERISA, Congress

11

perceived the statute's accrual and vesting provisions as being at the heart of that protection. See Hoover, 756 F.2d at 985.

> Unless an employee's rights to his accrued pension
> benefits are nonforfeitable, he has no assurance that

he will ultimately receive a pension. Thus, pension rights which have slowly been stockpiled over many years may suddenly be lost if the employee leaves or loses his job prior to retirement. Quite apart from the resulting hardships, ... such losses of pension rights are inequitable, since the pension contributions previously made on behalf of the employee may have been made in lieu of additional compensation or some other benefit which he would have received.

S. Rep. No. 93-383, 93d Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 4890, 4930.

Although the concepts of accrued benefits and vested benefits are distinct, the concerns expressed by this court in Hoover have force here. In fact, a district court, relying on the reasoning of Hoover, recently determined that the vesting requirements set forth in ERISA section 203 applied to service credits earned pursuant to reciprocity clauses. See Helms v. Local 705 Int'l Bhd. of Teamsters Pension Plan, 1999 WL 965230, at *10-12 (N.D. Ill. Sept. 30, 1999) (finding that plan that offered both a standard deferred pension and a pension based upon reciprocity agreements was required to adhere to ERISA's vesting provisions for both pensions). This conclusion is consistent with our reasoning in Hoover and with the concerns expressed by Congress regarding the protection of accrued benefits and vested rights.

The establishment of reciprocal pension agreements promotes transfers of employees between employers within funds that are parties to reciprocity agreements and provides the employees with the apparent security that they will receive a pension based upon their combined years of service. See Helms, 1999 WL 965230, at *12. It would be inconsistent with the purpose of ERISA to allow funds to promote movement by employees in these circumstances while at the same time subjecting such employees to "penalties" for having so moved.

12

Further, by opting to provide pension benefits based upon years or service earned under other funds, the Local 641 Fund chose not to avail itself of the provisions of ERISA section 203(b) for the purposes of the Pro-rata Pension. Section 203(b) is permissive in that it states that a plan may disregard service with an employer during any period in which the employer did not maintain the plan. See 29 U.S.C. S1053(b)(1)(C). Thus, ERISA does not require a plan to disregard such service. Having chosen to provide a pension plan expressly based upon years of service earned with certain employers not within the Local 641

Fund jurisdiction, the Local 641 Fund is barred from disregarding those years of service for the purposes of vesting under ERISA Section 203(a).

We reiterate that we agree with the defendants and the district court that the defendants were under no obligation under ERISA to provide for reciprocal agreements and Pro-rata Pensions. Nevertheless, once having made the determination to provide for such pensions, the defendants were obliged to formulate a plan providing for vesting in accordance with ERISA section 203(a)(2)(A), 29 U.S.C. S 1053(a)(2)(A). Thus, this case represents a situation, not unusual in the law, that an actor`s discretion in how it engages in certain conduct is circumscribed, even though it was not obliged to engage in the conduct in thefirst instance.

Finally, the defendants argue that they cannot be required to grant Smith a Pro-rata Pension because he brought this action under ERISA section 502(a)(3), 29 U.S.C. S 1132(a)(3), rather than ERISA section 502(a)(1)(B), 29 U.S.C. S 1132(a)(1)(B). See Ream v. Frey, 107 F.3d 147, 151-53 (3d Cir. 1997). Smith contends, however, that he appropriately did not bring this action under 29 U.S.C. S 1132(a)(1)(B) because that section applies to actions brought "under the terms of the plan" and he acknowledges that the defendants acted consistently with the terms of the plan. Yet in his view they nevertheless breached their fiduciary duties because the plan as written does not comply with ERISA.

Our recent opinion in Harte v. Bethlehem Steel Corp., No. 98-2052, 2000 WL 225896, at *1 (3d Cir. Feb. 29, 2000),

13

supports Smith's position that a fiduciary acting consistently with a plan nevertheless may breach its fiduciary duty. Smith thus proceeded properly in this case under ERISA section 502(a)(3). But we will not linger on the question of whether Smith sued under the wrong subsection of ERISA section 502, as we expect that the defendants now will apply the plan in accordance with the ERISA ten-year vesting requirements. Moreover, we would be reluctant to order benefits granted, a remedy that might be appropriate relief under ERISA section 502(a)(1)(B), as we do not know whether there is any impediment aside from the ten-year vesting requirement to Smith's recovering Pro-rata Pension benefits. For example, Smith may be entitled to a Deferred Pension, and we doubt that he will be entitled to obtain both pensions. Of course, in light of our disposition, we are acting without prejudice to Smith's taking such other steps as may be necessary to recover

Pro-rata Pension benefits.

In view of our foregoing conclusions, we will reverse the summary judgment of the district court to the extent that it held the Local 641 plan did not violate ERISA with respect to the statute's ten-year vesting requirement. The Pro-rata Pension requirements violate the vesting requirements by making benefits contingent on obtaining service credits beyond ERISA's permitted forfeiture periods and defendants have a fiduciary obligation to comply with the law.

In addition to arguing that the Local 641 Fund's Pro-rata Pension violated ERISA's vesting provisions, Smith also contends that by reason of his ten and one-half years of service with Eastern Express, he was entitled to a Deferred Pension from the Local 641 Fund plan. The district court found that while this argument may have merit, it concerns the application of the terms of the plan to Smith and not whether the terms violate ERISA. The district court concluded that such a challenge must be brought pursuant to ERISA section 502(a)(1)(B), 29 U.S.C. S 1132(a)(1)(B), dealing with the denial of benefits, and not in an action seeking equitable relief to remedy a breach of fiduciary duty under ERISA section 502(a)(3), 29 U.S.C. S 1132(a)(3). We agree with the district court on this point and consequently

we will affirm the order for summary judgment to that extent without further discussion and without prejudice to a later action under section 502(a)(1)(B), if that should be appropriate.

III. CONCLUSION

For the reasons set forth above, the order for summary judgment of April 8, 1999, will be reversed in part and affirmed in part. The district court erred when it concluded that the Local 641 Fund plan's 15-year service credit requirement for a Pro-rata Pension did not violate ERISA. Accordingly, to the extent Smith sought to challenge the propriety of the 15-year requirement, this matter will be remanded to the district court for the entry of judgment in favor of Smith and the fashioning of appropriate relief pursuant to ERISA section 502(a)(3), 29 U.S.C. S 1132(a)(3). The decision of the district court will be affirmed, however, to the extent it held that Smith cannot proceed pursuant to ERISA section 502(a)(3), 29 U.S.C. S 1132(a)(3), to assert his rights to a Deferred Pension under the Local 641 Fund plan.

A True Copy:

Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit