854 F.2d 1516
 9 Employee Benefits Ca 2560
 R.H. ASHENBAUGH, R.B. Andrews, R.L. Appeldorn, A.L. Austin,
J.D. Balser, A. Barrasso, J.O. Bauer, H.W. Bigleman, C.R.
Blazier, J.P. Bressanelli, G. Brown, E. Bucan, J.M. Burke,
J.R. Butchko, E.C. Calvin, R.R. Campbell, P.D. Castellano,
D.R. Cauley, J.L. Cerasi, E. Chapman, S. Christy, P.R.
Ciancone, T.M. Costello, T.J. Curry, G. Dauka, A.J. DeCosta,
A.P. DiMarzio, O.E. Edwards, E.P. Erath, E.P. Fahnert, H.
Farrington, J.S. Ferrence, R.D. Feydo, E.R. Finger, C.E.
Fix, Jr., W. Frnak, N.E. Frederick, J.P. Frenn, R. Fronko,
L.L. Gibbs, W.L. Gleason, L.E. Gordon, J.E. Grimm, P.E.
Grubbs, E.R. Guerra, A.J. Gulutz, J.T. Haaf, J.D. Hamacher,
Jr., P.J. Hannon, R.M. Hansen, M.I. Harpham, D.H. Heldman,
G.W. Henglein, J.K. Hile, R.T. Hopper, H.M. Howell, J.B.
Itzel, Jr., K.M. Janke, C.L. Jobe, Jr., K.H. Johns, R.O.
Johnson, Jr., L.M. Johnston, E.T. Jones, R. Kao, D.P. Kerr,
Jr., P.A. Keys, R.W. Knalley, E.E. Knapek, W.J. Kofalt, S.W.
Kohler, T. Kominitsky, T.R. Krupa, J.R. Kundick, W. Lake,
D.F. Laneve, T. Lehmann, R.H. Lewis, R.A. Lippert, W.R.
Livingston, A.J. Lynn, D.B. McClain, J.L. McKain, E.L.
Marsh, C.R. Martsolf, F.S. Matsukas, T.J. Mayton, M.
Mitrovich, M.A. Molchan, A.N. Morrison, H. Mraunac, M.R.
Muckian, C.W. Murray, III, C.J. Myers, L.V. Nagle, E.
Ordich, W.H. Orr, A.J. Pasko, Jr., M.E. Pellegrino, G.C.
Pascion, G.V. Peterson, R.F. Pisano, W.J. Popp, G.P. Porto,
G. Postich, D.E. Powell, R.W. Prentice, J. Presutti, W.C.
Price, L.E. Raykovics, T.R. Reed, J.W. Reider, M.J. Rose,
R.H. Rutter, K.E. Sanders, M.A. Sarver, P.K. Schake, J.W.
Scholtz, W.T. Scott, J.G. Seman, A.H. Sheline, M.L. Sherry,
F.R. Shuss, W.W. Simpson, A.E. Six, J.E. Smith, E.H.
Spaziani, W.H. Stephens, C.D. Strosnider, J.F. Suffoletta,
J. Susich, H. Taylor, F.S. Thornberry, Jr., J.R. Tice, D.A.
Townley, R. Trbovich, R.T. Turner, R.R. Vlah, D.W. Ware,
G.T. Weekley, E.M. Werries, Jr., J.A. Whitehead, T.
Williams, Jr., T.H. Wills, D.P. Wood, A.J. Yanni, L.H.
Young, Jr., R.C. Young, H.F. Yute, and W.I. Zazwirsky, Appellants,
v.
CRUCIBLE INC., 1975 SALARIED RETIREMENT PLAN.
 No. 87-3722.
 United States Court of Appeals,
Third Circuit.
 Argued March 17, 1988.
Decided Aug. 23, 1988.
Rehearing and Rehearing In Banc Denied Sept. 19, 1988.
 
 James J. Ahearn (argued), Ligonier, Pa., for appellants.
 William H. Powderly, III, Peter D. Post (argued), Martha Jo Wagner, Reed Smith Shaw & McClay, Pittsburgh, Pa., for appellee.
 Gary M. Ford, General Counsel, Carol Connor Flowe, Deputy General Counsel, Frank H. McCulloch, Acting Asst. General Counsel, Jeanne K. Beck, John Foster, Pension Ben. Guar. Corp., Office of the General Counsel, Washington, D.C., for amicus curiae.
 Before STAPLETON, MANSMANN and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge.
 
 
 1
 In this ERISA action, the district court sustained the decision of the defendant Retirement Plan to deny certain benefits to the plaintiff participants, and the plaintiffs have appealed. Their main claim is that the Thirty-Year Retirement Benefits provided for in Plan Sec. 4.3 are "accrued benefits" and that because the Plan was partially terminated, the length-of-service requirement specified as a prerequisite to the receipt of such benefits is suspended. Because we conclude that a participant does not become entitled to any benefit under the Thirty-Year Retirement provisions until the specified conditions of those provisions are met, we will affirm the judgment of the district court on that issue. We will also affirm the district court's decision with respect to plaintiffs' other claims, which concern the Sec. 4.3(b) benefit limit, the Sec. 4.1(d) 5% window benefit, and the allegedly improper administration of the Plan.
 
 I.
 
 2
 Crucible, Inc. is a subsidiary of Colt Industries Operating Corporation (CIOC), which is in turn a subsidiary of Colt Industries, Inc. (Colt). The sole defendant here is the pension plan (the Plan) sponsored by CIOC for salaried, non-union employees of its steel-related operations, including a Crucible plant in Midland, Pennsylvania. Plaintiffs, former salaried, non-union employees at the Crucible Midland plant, are participants in the Plan. The Plan is a defined benefit, single-employer, qualified plan, subject to the vesting, funding, and participation requirements of the Internal Revenue Code (the Code) and of ERISA, 29 U.S.C. Secs. 1001 et seq. (1982 & 1988 Supp.).
 
 
 3
 In March of 1982, Colt announced that it planned to dispose of the Crucible Midland plant. Colt began shutting the plant down in April of 1982. During the spring of 1982, Colt had hopes of selling the plant, and was negotiating seriously with a potential purchaser. The negotiations fell through, however, and production at the plant was halted by Colt on July 22, 1982. Colt announced its decision to permanently close the plant on August 16, 1982.
 
 
 4
 Several hundred Plan participants left Crucible involuntarily as a result of the plant shutdown. This exodus of employees was sufficient to result in a partial termination of the Plan, and in mid-1983, Colt obtained a determination from the Internal Revenue Service (the IRS) that the Plan was partially terminated as of July 31, 1982. The partial termination affected neither the qualification of the Plan for tax benefits nor the tax-exempt status of the trust in which Plan assets are held.[1]
 
 
 5
 The Plan Administrator, an employee of Colt, determined that the partial termination of the Plan entitled its participants to certain benefits but not others. The Retirement Committee, composed of officers of Colt and advised by Colt's counsel, agreed with the Administrator's determination.[2] The plaintiffs did not, and, after exhausting their administrative remedies without success, filed this suit to compel payment of various additional benefits. There are 149 plaintiffs.
 
 
 6
 Plan participants who reach normal retirement age, defined in Plan Sec. 1.1 as age 65, are entitled to normal retirement benefits determined in accordance with Sec. 4.1 of the Plan. As required by ERISA, 29 U.S.C. Sec. 1053, these normal retirement benefits vest within a limited time over the course of employment. No plaintiffs claim that they were improperly denied normal age-65 retirement benefits by the Plan. The only part of the normal retirement benefit provision which is in dispute here is Sec. 4.1(d), a 1977 amendment which provides as follows for a 5% add-on:
 
 
 7
 In the case of a Participant who retires on or after August 1, 1977 and before August 1, 1986, and who receives benefits determined with respect to Final Average Compensation and Final Salary under Sections 4.1(a) and (b) above without regard to the minimum benefit payable under Section 4.1 generally, such Participant's benefit shall be increased effective August 1, 1977 by five percent (5%) of the amount otherwise payable under Sections 4.1(a) and (b) determined without regard to this subsection.
 
 
 8
 App. at 84. This type of benefit, called a "window benefit," is used by employers to encourage employees able to retire during a particular time period to do so.
 
 
 9
 Plan Sec. 4.3 sets forth Thirty-Year Retirement Benefit provisions applicable to participants with a requisite number of years of service. If a Plan participant has 30 years of service and is 62 or over, Sec. 4.3(a) allows that person to retire and receive the full benefits to which he or she would be entitled if he or she were to wait and retire at age 65. If a participant has 30 years of service but is not yet 62, Sec. 4.3(b) provides that that person may retire with benefits calculated in any of several ways; although these benefits generally would be greater than those available to that person if he or she retired early and were covered only by the normal age-65 retirement provision, they are limited in a way Sec. 4.3(a) benefits are not. The text of Plan Sec. 4.3 reads in relevant part:
 
 
 10
 4.3 Thirty Year Retirement. Subject to the minimum specified in Section 4.1, the annual retirement benefit payable to a Participant who shall retire on a Thirty Year Retirement Date, from said Date for the remainder of his life, shall be whichever one of the following is applicable:
 
 
 11
 (a) If the participant has attained age sixty-two (62), an annual retirement benefit computed in accordance with subdivisions (i) and (ii) of subsection (a) of Section 4.1, or
 
 
 12
 (b) If the Participant has not attained age sixty-two (62), an annual retirement benefit which shall be the greatest of:
 
 
 13
 (i) the annual retirement benefit computed in accordance with subdivisions (i) and (ii) of subsection (a) of Section 4.1, limited to the Annual Amount set forth in Schedule I below applicable to the date of the Participant's retirement multiplied by the total number of years ... of Credited Service, or
 
 
 14
 (ii) the annual retirement benefit equal to the sum of such Participant's Accrued Benefit and the amount computed in accordance with subdivisions (i) and (ii) of subsection (a) of Section 4.1, utilizing Future Service in lieu of Credited Service for the purpose of such computation, limited to the Annual Amount set forth in Schedule I below applicable to the date of the Participant's retirement multiplied by the total number of years ... of Future Service.
 
 
 15
 SCHEDULE I
Applicable to (i) and (ii)
 Retirement Annual
 on or after Amount
 January 1, 1978 $275
 January 1, 1982 $462
 
 
 16
 or
 
 
 17
 (iii) the immediate annual retirement benefit or deferred retirement benefit computed in accordance with Section 4.4 if, at the time of Retirement under this subsection (b), the Participant had attained age fifty-five (55).
 
 App. at 84-85.[3]
 
 18
 Plan Sec. 4.4 provides for early retirement at age 55. A participant may retire at 55 or thereafter and defer receipt of pension payments until he or she reaches age 65, at which time he or she will receive full benefits determined under Sec. 4.1. An early retiree may in the alternative elect to begin receiving Sec. 4.1 benefits immediately, in which case the benefits will be reduced by .5% for each month shy of 65 the retiree is at the time of early retirement.
 
 
 19
 The Plan makes separate provision for employees who are terminated as opposed to retiring voluntarily. Under Sec. 5.2(a) of the Plan, employees terminated before age 55 are to receive either their "annual retirement benefit commencing at age sixty-five (65) ... subject to the minimum specified in and computed in accordance with the provisions of Sec. 4.1," or, under Sec. 5.2(b), an annual benefit commencing at early retirement age under Sec. 4.4, but reduced as provided under that section. Under Sec. 3.2, "[a]ny participant who terminates entitled to a benefit by reason of Section 5.2 shall hereinafter be called a 'Deferred Vested Participant.' " App. at 76.
 
 
 20
 A final pertinent Plan provision is Sec. 12.1, which states that:
 
 
 21
 (b) In the event of termination or partial termination of the Plan, the assets of the trust under the Plan shall be allocated in accordance with the priorities established in Section 4044 of ERISA [29 U.S.C. Sec. 1344(b) ] (or any successor statutory provision).
 
 
 22
 (c) In the event of "termination" or "partial termination" of the Plan (as those terms are used in Section 411(d)(3) of the Internal Revenue Code, or any successor statutory provision) the rights of the Participants, Beneficiaries and Contingent Annuitants to benefits accrued to the date of such termination or partial termination, to the extent funded as of such date, shall be nonforfeitable.
 
 
 23
 App. at 119.
 
 
 24
 The most important claim made by the plaintiffs under the above Plan provisions is that those plaintiffs who lacked 30 years of service at the time of their termination are entitled to a portion of the Thirty-Year Retirement Benefits even though, because they lacked 30 years of service at the time of their termination, they have not met, and will never meet, the length-of-service condition set by the Plan for receipt of such benefits.[4] The plaintiffs make two arguments in support of this claim. The first is that the right to computation of payments under the Thirty-Year Retirement provisions is an "accrued benefit," and that, in the context of a partial plan termination, Sec. 12.1(c) of the Plan has the effect of dispensing with the requirement that one serve for 30 years before becoming entitled to Thirty-Year Benefits. In response, the defendant Plan points out that there is no Plan provision stating or even suggesting that Thirty-Year Benefits can accrue before the length-of-service requirement is met, and that therefore such benefits cannot accrue until fulfillment of that requirement.[5] The Plan further maintains that Thirty-Year Retirement Benefits are a "retirement-type subsidy" rather than a retirement or early retirement benefit; according to the Plan, the Thirty-Year Benefits can be so described since they in essence provide that participants meeting the conditions will get normal retirement benefits plus an additional amount which is a subsidy.[6]
 
 
 25
 The other argument made by the plaintiffs in support of their claim to Thirty-Year Benefits is that in the event of partial termination, Sec. 12.1(b) of the Plan, by incorporating Sec. 4044 of ERISA, 29 U.S.C. Sec. 1344, operates to create a right in the Thirty-Year Benefits offered by the Plan. The Plan contends that Sec. 4044 creates no substantive right to benefits, and that because the Plan is fully funded, neither Sec. 4044 of ERISA nor Plan Sec. 12.1(b) have any application here.
 
 
 26
 A second claim is asserted by those plaintiffs who had 30 years of service but were not yet 62 years old when they were terminated. At issue here is the benefit limit or salary cap set forth in Plan Sec. 4.3(b), which was applied by the Plan in determining the benefits to which these plaintiffs were entitled. The plaintiffs contend that because they were terminated involuntarily and so did not have a chance to work until age 62, the benefit limit should not be used in determining their benefits. The Plan's response is that there is no reason to ignore the clearly-stated benefit limit of Sec. 4.3.[7]
 
 
 27
 A third and final claim to additional benefits is made by those plaintiffs who had not reached age 55 at the time of their termination, and whose termination fell within the Sec. 4.1(d) window period. These plaintiffs were found entitled to deferred vested benefits under Sec. 5.2, but were not given the 5% add-on provided for by Sec. 4.1(d). In the Plan's view, because these plaintiffs could not at the time they were terminated have taken advantage of any retirement option provided by the Plan, they were not covered by a provision applicable to any participant "who retires" within the window period.
 
 
 28
 In addition to the above claims to additional benefits,[8] the plaintiffs assert that the fashion in which the Plan was administered was so in conflict with ERISA as to require the court to invalidate the Plan fiduciaries' denial of the plaintiffs' claims to additional benefits. The plaintiffs cite as defects in administration of the Plan that the Plan fiduciaries relied on Colt's counsel rather than hiring independent counsel; that the fiduciaries did not at the time of the partial termination conduct a general review of benefits payable; that the fiduciaries did not give the participants written notice of the decision to seek IRS approval of partial plan termination and of "the significance ordinarily associated with such an event"; and that the fiduciaries failed to respond adequately to the participants' requests for information about the funding and administration of the Plan and for access to Plan files and records. The Plan contends that the fiduciaries acted properly and fulfilled all responsibilities owed to the plaintiff participants.
 
 
 29
 The district court, concluding that the plaintiffs had not shown the administrators' interpretation of the Plan to be arbitrary and capricious and that plaintiffs' claims regarding ERISA violations were meritless, found in favor of the Plan on every claim. Both parties had moved for summary judgment; the court granted the Plan's motion, and denied that of the plaintiffs.
 
 
 30
 On appeal, plaintiffs contend that the district court erred both in its assessment of the relevant legal and Plan provisions, and in its use of the arbitrary and capricious standard to evaluate the decisions of the Plan fiduciaries. They seek reversal of the summary judgment in favor of the Plan, and the entry of summary judgment in their favor. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291; because this is an appeal from a grant of summary judgment, review is plenary. Struble v. New Jersey Brewery Employees' Welfare Trust Fund, 732 F.2d 325, 330 (3d Cir.1984).
 
 II.
 
 31
 The standard of conduct courts have ordinarily used when reviewing an ERISA fiduciary's interpretation and administration of a plan is that the fiduciary may not act in an arbitrary and capricious manner. See Rehmar v. Smith, 555 F.2d 1362, 1371 (9th Cir.1977); Gaines v. Amalgamated Ins. Fund, 753 F.2d 288, 289 (3d Cir.1985). After the initial decision of the district court in this case, however, this court held in Bruch v. Firestone Tire & Rubber Co., 828 F.2d 134 (3d Cir.1987), that where the interests of the plan fiduciaries are adverse to those of the plan beneficiaries, the fiduciaries' decisions in administering the plan should not be given the deference usually accorded but should instead be reviewed with more care, using general principles of contract interpretation. The plaintiffs in this case moved for reconsideration by the district court in light of Bruch, but their motion was denied. The Supreme Court has since granted certiorari in Bruch, --- U.S. ----, 108 S.Ct. 1288, 99 L.Ed.2d 498 (1988), in part on the question of the proper scope of judicial review of decisions made by ERISA fiduciaries.
 
 
 32
 We assume without deciding that the higher standard of scrutiny required in Bruch applies to this case.[9] Even if we do not give the Plan administrators' interpretation of the Plan the deference to which it would customarily be entitled, as will be clear from the following analysis of each of the plaintiffs' claims, we reach the same conclusions on the law and on the proper interpretation of Plan provisions as did the Plan administrators. Thus, whether or not Bruch was correctly decided is not material to the outcome of this case.
 
 III.
 
 33
 We first address the main issue presented, that of whether the defendant's denial of Thirty-Year Retirement Benefits may be sustained. Plaintiffs' argument that it may not rests on two sections of the Plan, Sec. 12.1(c) and Sec. 12.1(b), and on the statutory provisions upon which these two sections are based, Code Sec. 411(d)(3) and ERISA Sec. 4044 respectively. In our view, the plaintiffs' argument not only misconstrues these Plan provisions and the relevant law, but misperceives their purposes as well.
 
 A. Plan Sec. 12.1(c)
 
 34
 The provisions of Plan Sec. 12.1(c) must be part of a plan if the trust in which plan assets are held is to be tax-exempt. Under the Code,
 
 
 35
 a trust shall not constitute a qualified trust ... unless the plan of which such trust is a part provides that ... upon its termination or partial termination ... the rights of all affected employees to benefits accrued to the date of such termination [or] partial termination, ... to the extent funded as of such date ... are nonforfeitable.
 
 
 36
 Sec. 411(d)(3). The plaintiffs state repeatedly that this Plan section and this Code provision are what entitle them to Thirty-Year Benefits. They say, for example:
 
 
 37
 The Participants ... seek nothing more than the implementation of Plan Sec. 12.1(c).... The occurrence of the rare event of a partial plan termination triggers Sec. 12.1(c) of the Plan and requires that the age and service requirements otherwise applicable be superseded.
 
 
 38
 Appellants' Reply Brief at 3-4; see also Appellants' Brief at 18 ("no rewriting of the Plan is necessary [as] Plan Article 12.1(c) provides all the writing needed"); Reply Brief at 7 (stating that plaintiffs are "governed" by Sec. 411(d)(3)).
 
 
 39
 Plan Sec. 12.1(c) must be read in the context of ERISA as a whole, however. Under ERISA, the concepts of accrued benefits and vested (i.e. non-forfeitable) rights are quite distinct. In Hoover v. Cumberland, M.D. Area Teamsters Pension Fund, 756 F.2d 977 (3d Cir.1985), we began by explaining the concept of "accrued benefits":
 
 
 40
 ERISA's statutory definition of "accrued benefits" imparts a specific meaning to the word accrued, connoting a set periodic increase or accumulation. Section 3(23) states that an accrued benefit is an individual's benefit "expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. Sec. 1002(23)(A). ERISA's definitional counterpart for accrued benefit in the Internal Revenue Code, 26 U.S.C. Sec. 411(a)(7)(A)(i), is identical, and has been interpreted by the Internal Revenue Service in a Technical Information Release:
 
 
 41
 [I]n the case of a defined benefit plan, the "accrued benefit" must be expressed in the form of an annual benefit commencing at normal retirement age. The plan must provide a formula under which each participant's actual accrued benefit under the plan can be determined in each plan year.
 
 
 42
 Internal Revenue Service T.I.R. No. 1403 (Sept. 17, 1975). An accrued benefit, then, represents the interest in a retirement benefit that a participant earns each year, and a plan must state a method or formula for determining a participant's annual accrual rate. This requirement enables a worker to mark his or her progress toward the full pension benefit due at retirement.
 
 
 43
 756 F.2d at 981-82 (footnotes omitted).
 
 
 44
 We then contrasted "accrued benefits" with "vested" or "non-forfeitable" rights:
 
 
 45
 The concepts of accrued on the one hand, and vested or "nonforfeitable", on the other, are related, but not the same. A participant becomes fully vested when he gains a nonforfeitable right to receive his entire accrued benefit. Vesting provisions do not affect the amount of the accrued benefit, but rather govern whether all or a portion of the accrued benefit is nonforfeitable. Accrual provisions provide a formula for calculating the amount of the normal retirement benefit which an employee has earned at any given time.
 
 
 46
 Id. at 983-84 (footnotes omitted). Rights must vest under a qualified plan within a relatively short term of years (presently fifteen and soon seven, see Code Sec. 411(a)(2); 29 U.S.C. Sec. 1053), while "accrued benefits" continue to accrue throughout the employee's service.
 
 
 47
 As we will discuss hereafter, the parties here disagree on whether the Thirty-Year Benefit falls within the statutory definition of an "accrued benefit." We will assume for the moment that it does come within that definition and that it is thus to be treated in the same manner as the normal retirement benefit. As we have seen, an employee's accrued benefit at any particular point in time is what a fully vested employee would be entitled to receive under the terms of the plan if employment ceased at that particular point in time. Here, the Plan provides that an employee is entitled to receive Thirty-Year Retirement Benefits only when he or she retires on a "Thirty-Year Retirement Date", i.e., only after having given 30 years of service. Thus, even if the Thirty-Year Benefit is to be treated as an accrued benefit, it does not "accrue" for any employee until he or she has given 30 years of service.[10]
 
 
 48
 Plaintiffs acknowledge that they would not be entitled to any Thirty-Year Benefit if it were not for Sec. 12.1(c) and the fact that their employment ceased in the course of a partial termination. It is the partial termination and Sec. 12.1(c), they say, that "require[ ] that the age and service requirements otherwise applicable be superseded." But Sec. 12.1(c), and Code Sec. 411(d)(3) which it implements, have nothing to do with altering the conditions under which accrued benefits will accrue. As is apparent from their face, their purpose is to guarantee to employees who would not otherwise have any vested right to any pension benefits at the time of a plan termination or partial termination that they will be treated as having a fully vested right to any benefits that have accrued and are funded. Thus, for example, if a plan provides for 100% vesting of accrued benefits after ten years of service and a participant leaves the employer within ten years of being hired, he or she will not be entitled to any accrued benefits. On the other hand, if the participant were terminated from service in the course of an event giving rise to a termination or partial termination of the plan, he or she, by virtue of the provision which all plans are required to contain by Code Sec. 411(d)(3) in order to qualify for valuable tax advantages, would be entitled to 100% of his or her accrued benefits. See Weil v. Retirement Plan Admin. Comm., 750 F.2d 10, 11 (2d Cir.1984) ("Because [employer] terminated both [participants] before either had completed ten years of service, neither of them was entitled to any non-vested benefits--unless their termination occurred pursuant to a partial termination of the [employer's] Plan").
 
 
 49
 Section 411(d)(3) and Plan Sec. 12.1(c) are thus vesting provisions only. As such, they have nothing whatever to do with the rights of fully vested employees like the plaintiffs in this case, and we are at a loss to understand plaintiffs' argument that these provisions somehow require the Plan to give them benefits they do not claim are provided by the other terms of the Plan. We therefore decline to accept plaintiffs' contention with respect to the effect of Sec. 12.1(c).[11]
 
 
 50
 We also find it significant that the Pension Benefit Guaranty Corporation (PBGC) considers plaintiffs' argument regarding their entitlement to Thirty-Year Benefits as unfounded as we do. While most of its amicus brief is devoted to the subject of the proper interpretation of Sec. 4044 of ERISA, discussed below, the PBGC also takes the position that:
 
 
 51
 [Plaintiffs'] claim to additional benefits pursuant to Section 4.3(a) of the Plan is insupportable. That Section provides unreduced retirement benefits only to participants who have attained age 62 and completed 30 years of service. Appellants did not satisfy these conditions on July 31, 1982, when the partial termination occurred, and, because they lost their jobs when the Midland plant shut down, may never satisfy them. The Plan does not take post-termination events, such as the satisfaction of the age requirement, into account, and does not promise to grant participants credit for service never performed. And, certainly, it nowhere provides that the "age and service requirements ... were removed upon the occurrence of [the] Plan termination," as appellants contend.
 
 
 52
 PBGC Amicus Curiae Brief at 9.
 
 
 53
 We therefore believe the issue posed by plaintiffs--i.e., whether Plan Sec. 12.1(c) or Code Sec. 411(d)(3) require the payment to them of Thirty-Year Benefits--can be resolved without determining whether early retirement benefits of the sort in dispute here can ever be properly classified as an "accrued benefit." Even if we were required to reach that issue, however, we could not agree with plaintiffs that Thirty-Year Benefits are within the statutory definition of an "accrued benefit."
 
 
 54
 Both the Code and ERISA define the term "accrued benefit" as:
 
 
 55
 in the case of a defined benefit plan, the [individual employee's] accrued benefit determined under the plan and ... expressed in the form of an annual benefit commencing at normal retirement age.
 
 
 56
 Sec. 411(a)(7)(A)(i); 29 U.S.C. Sec. 1002(23) (emphasis added).
 
 
 57
 Plaintiffs insist that the Thirty-Year Benefit is an early retirement benefit that falls within this definition. They find support for their position in Amato v. Western Union Int'l Inc., 773 F.2d 1402 (2d Cir.1985), cert. dismissed 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986). The issue in Amato was the validity of a plan amendment reducing early retirement benefits for which plaintiff participants were or would have become eligible; the court decided that such a reduction would be impermissible under ERISA Sec. 204(g), 29 U.S.C. Sec. 1054(g), which forbids the reduction of "accrued benefits" by the plan amendment. While Sec. 1054(g) does not cover partial terminations and so would not apply here, Amato 's definition of "accrued benefits" is the definition which the plaintiffs contend should be applied to determine the scope of coverage of Plan Sec. 12.1(c).
 
 
 58
 This court has, however, disagreed with Amato on the very issue of whether early retirement benefits are "accrued benefits" in the context of plan amendment. In Bencivenga v. Western Pennsylvania Teamsters & Employers Pension Fund, 763 F.2d 574, 577 (3d Cir.1985), we held that early retirement benefits did not fall within the definition of "accrued benefits," and were therefore not protected by Sec. 1054(g). Bencivenga stands as precedent in this circuit, and we are not free to adopt plaintiffs' position that Amato rather than Bencivenga should be followed here. In any case, we think Bencivenga better law. One important point on which Amato and Bencivenga part company, and as to which we think Bencivenga correct, is the significance of the following language from ERISA's legislative history:
 
 
 59
 In the case of a defined benefit plan the bill provides that the accrued benefit is to be determined under the plan, subject to certain requirements. The term 'accrued benefit' refers to pension or retirement benefits and is not intended to apply to certain ancillary benefits, such as medical insurance or life insurance.... Also, the accrued benefit to which the vesting rules apply is not to include such items as the value of the right to receive benefits commencing at an age before normal retirement age, or so-called social security supplements....
 
 
 60
 H.R.Rep. No. 807, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4670, 4726; see also H.Conf.Rep. No. 1280, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 5038, 5054. The Amato court was of the view that this passage has nothing to do with early retirement benefits, and thus "sheds no light on the meaning to be given to the term 'accrued benefit' in the present context." 773 F.2d at 1410. Bencivenga, however, quoted and relied on this passage in connection with claims to early retirement benefits, as did Hoover and as have a number of other courts. See, e.g., Shaw v. International Ass'n of Machinists and Aerospace Workers Pension Plan, 750 F.2d 1458 (9th Cir.1985), cert. denied 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985) (quoting and relying on the above passage in holding that amendment that eliminated the cost-of-living increase in a "living pension" feature of a plan was elimination of an accrued benefit); Sutton v. Weirton Steel Div'n of Nat'l Steel Corp., 567 F.Supp. 1184, 1196 (N.D.W.Va.1983), aff'd 724 F.2d 406 (4th Cir.1983), cert. denied 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984) (relying on quoted legislative history in holding that certain retirement benefits were conditional and in the nature of early retirement benefits and so could not be considered accrued benefits); Petrella v. NL Industries, Inc., 529 F.Supp. 1357 (D.N.J.1982) (holding that elimination of early retirement option did not violate ERISA because benefits under that option did not accrue nor were they vested so as to be protected against forfeiture). But see Collins v. Seafarers Pension Trust, 641 F.Supp. 293, 296 (D.Md.1986) (declining to follow Hoover and Bencivenga, and holding a funded, noncontingent early retirement benefit to be "an integrated part of a retirement plan" and within the scope of accrued benefits protected in case of plan amendment). In our view, this legislative history is contrary to the plaintiffs' position here, just as it was in Bencivenga.
 
 
 61
 We take Bencivenga and the other caselaw cited above to support the proposition that in 1982, when the partial termination of CIOC's Plan occurred, Thirty-Year Benefits were not within the statutory definition of an accrued benefit and that, for this additional reason, Plan Sec. 12.1(c) did not make Thirty-Year Benefits available to plaintiffs.
 
 
 62
 Subsequent developments in this area of the law provide additional support for this conclusion. Since 1982, Congress, in the Retirement Equity Act of 1984, has provided as follows:
 
 
 63
 (A) ... A plan shall be treated as not satisfying the requirements of this section if the accrued benefit of a participant is decreased by an amendment of the plan....
 
 
 64
 (B) ... For purposes of subparagraph (A), a plan amendment which has the effect of--
 
 
 65
 (i) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
 
 
 66
 (ii) eliminating an optional form of benefit,
 
 
 67
 with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy.
 
 
 68
 Code Sec. 411(d)(6) (effective for plan years beginning after Dec. 31, 1984). Each side in this case relies upon this provision for support of its position. The plaintiffs argue that it represents a congressional acceptance of the Amato court's interpretation of the state of the law prior to the amendment. As we pointed out in Bencivenga, 763 F.2d at 577, however, elsewhere the Act's legislative history states that:
 
 
 69
 The bill clarifies the scope of the prohibition against such decreases [in accrued benefits]. The committee intends that no inference is to be made on the basis of this clarification as to the scope of the prohibition before the effective date of the provision.
 
 
 70
 S.Rep. No. 575, 98th Cong., 2d Sess. 28, reprinted in 1984 U.S.Code Cong. & Admin.News 2547, 2574.
 
 
 71
 As we have indicated, we do not believe the pre-1984 law regarded all amendments eliminating early retirement benefits, retirement-type subsidies, or other optional benefits, or reducing early retirement benefits or retirement-type subsidies, as being amendments affecting accrued benefits. But the fact that such amendments will now be "treated as reducing accrued benefits" does not mean that Congress intends to foreclose employers from circumscribing the availability of such optional benefits when they are being created.
 
 
 72
 Even if Sec. 411(d)(6) reflected the state of the law in 1982, it would require that we sustain defendant's, rather than plaintiffs', position regarding the Thirty-Year Benefits. While this provision makes it clear that the amendment of a plan to reduce early retirement benefits is impermissible because it must be treated as an amendment reducing "accrued benefits," Sec. 411(d)(6) also excludes from full "accrued benefits" protection any "retirement-type subsidy." It is apparent from the legislative history of the 1984 Code amendment that benefits like the Thirty-Year Benefits offered by this Plan are a retirement-type subsidy, and are therefore a benefit to which participants are not entitled unless relevant conditions are met. According to the legislative history,
 
 
 73
 the bill makes it clear that the prohibition against reduction of a benefit subsidy (the excess of the value of a benefit over the actuarial equivalent of the normal retirement benefit) applies to a participant only if the participant meets the conditions imposed by the plan on the availability of the subsidy. If the protection is afforded, an employee's accrued benefit is not to be less than the protected level or the accrued benefit determined under the plan without regard to the protection, whichever is greater. For example, if a plan is amended to eliminate a subsidized early retirement benefit for employees who have completed 30 years of service, then the plan would not be required to provide the subsidy to an employee who never completes 30 years of service, and it would not be required to provide benefits to such an employee before the normal retirement age. On the other hand, if the employee completes 30 years of service, then the employee's accrued benefit is not to be less than the protected level or the accrued benefit determined without regard to the protection, whichever is greater.
 
 
 74
 S.Rep. No. 575, supra, at 28, reprinted in 1984 U.S.Code Cong. & Admin.News 2547, 2574.[12] The excess of the value of the Thirty-Year Benefit over the actuarial equivalent of the normal retirement benefit is precisely what the plaintiffs in this case seek and have been denied. We conclude from this that the Thirty-Year Benefits at issue here are "retirement-type subsidies," and as such would not accrue until the conditions imposed by the Plan on their availability are fulfilled.
 
 
 75
 To sum up: while Sec. 411(d)(6) is not directly applicable here, it indicates that the Thirty-Year Benefit would be considered a retirement-type subsidy and not an "accrued benefit" that cannot be altered. But even disregarding that section, the fact remains that existing law in this circuit at the time of partial termination of the Plan is squarely against the view that the Thirty-Year Benefit was within ERISA's definition of an "accrued benefit." Finally, even if the Thirty-Year Benefit were considered an accrued benefit, Plan Sec. 12.1(c) would not have the effect of superseding the age and service requirements of the Plan. It follows that the Plan fiduciaries' denial of Thirty-Year Benefits must be sustained.
 
 B. Plan Sec. 12.1(b)
 
 76
 A secondary holding of Amato relates to the plaintiffs' other argument on this issue, which is that ERISA Sec. 4044, 29 U.S.C. Sec. 1344(a), and Sec. 12.1(b) of the Plan entitle them to Thirty-Year benefits. We again disagree with Amato, and affirm the district court's holding in this case that ERISA Sec. 4044 is an ordering provision rather than one that creates substantive rights.[13]
 
 The statute reads in part as follows:
 Sec. 1344. Allocation of assets
 
 77
 (a) Order of priority of participants and beneficiaries
 
 
 78
 In the case of termination of a single-employer defined benefit plan, the plan administrator shall allocate the assets of the plan (available to provide benefits) among the participants and beneficiaries of the plan in the following order:
 
 
 79
 (1) First, to that portion of each individual's accured [sic] benefit which is derived from the participant's contributions to the plan which were not mandatory contributions.
 
 
 80
 (2) Second, to that portion of each individual's accrued benefit which is derived from the participant's mandatory contributions.
 
 
 81
 * * *
 
 
 82
 (4) Fourth--
 
 
 83
 (A) to all other benefits (if any) of individuals under the plan guaranteed under this subchapter ...
 
 
 84
 (5) Fifth, to all other nonforfeitable benefits under the plan.
 
 
 85
 (6) Sixth, to all other benefits under the plan.
 
 
 86
 Amato held that Sec. 1344(a)(6) entitled participants of a fully-funded plan to receive contingent benefits even though the specified contingencies had not occurred. See 773 F.2d at 1415-16. The Fourth Circuit has followed Amato 's interpretation of Sec. 1344(a), in Tilley v. Mead Corp., 815 F.2d 989 (4th Cir.1987).
 
 
 87
 The Eleventh Circuit, however, has disagreed, holding in Blessitt v. Retirement Plan for Employees of Dixie Engine, 848 F.2d 1164, 1177 (11th Cir.1988) (in banc), that "the plain language of the Section 1344 allocation provisions" clearly specifies that those provisions extend only to benefits calculated in accordance with the terms of the retirement plan. For that reason, the Blessitt court concluded that employees were not entitled by ERISA to "receive a benefit which is calculated on the basis of anticipated future years of service which have not actually been worked as of the termination date," where the plan did not so provide. This holding is squarely against the plaintiffs in this case, who make an identical claim under Sec. 1344. In addition, both the IRS and PBGC oppose Amato 's and the plaintiffs' interpretation of Sec. 1344(a). In its amicus brief in this case, the PBGC states that:
 
 
 88
 Section 4044 ... is not a benefit accrual or vesting provision, and does not create any substantive right to benefits not otherwise provided for under the terms of a plan or elsewhere in ERISA. It merely orders the priorities for allocating plan assets to benefits already accrued under the terms of a plan as of the date of plan termination.... [T]he primary purpose of Section 4044 is "[t]o protect against evasion of the ... limits on [PBGC] insurance benefits by use of pension fund assets first to pay uninsured benefits."
 
 
 89
 PBGC Amicus Curiae Brief at 5-6 (quoting legislative history of Sec. 4044).[14] We think it clear that ERISA Sec. 4044, 29 U.S.C. Sec. 1344, does not create a right in early retirement benefits, but only sets priorities to be applied in cases where plan funds are not sufficient.[15] We therefore reject plaintiffs' argument based on Sec. 4044 of ERISA, and conclude that the Plan fiduciaries' decision on this question must also be sustained.
 
 IV.
 
 90
 We next address the claim that the Sec. 4.3(b) benefit limits, interpreted by the plaintiffs as a cap on creditable earnings, should not apply in the case of partial plan termination. Once again the answer to the issue raised by the plaintiffs is dictated by the express provisions of the Plan. The plaintiffs affected by the resolution of this issue have 30 years of service but are not yet 62 years of age.[16] They claim immediate entitlement to the Thirty-Year Benefit provided in Plan Sec. 4.3 but without the limitation imposed by Sec. 4.3(b)(i) and (ii). Once again, plaintiffs can point to nothing that would justify deviation from the express requirements of the Plan. First, they suggest that because the partial termination came before they had had an opportunity to attain 62, the age requirement should be ignored. The fiduciaries are not authorized, however, to disregard the express provisions of the Plan because the employment relationship has had a shorter duration than the employee may have hoped for. The Plan cannot be construed to guarantee any employee a right to remain such for any length of time or the benefits that such a right to continued employment would entail. Article VII, Sec. 7.2 states:The Plan shall not be deemed to constitute a contract between the Company and any Participant and any former Participant or to be a consideration for, or an inducement for, the employment of any Participant by the Company. Nothing contained in the Plan shall be deemed to give any Participant the right to be retained in the service of the Company or to interfere with the right of the Company to discharge any Participant at any time, without regard to the effect that such discharge shall have upon his rights, if any, under the Plan.
 
 
 91
 App. at 108.
 
 
 92
 Second, plaintiffs argue that Sec. 4.3(b) applies only to participants who "shall retire" and, accordingly, cannot be said to apply to participants who were involuntarily terminated. Fortunately for the participants who have served 30 years, the Plan has consistently taken the position that any employee who is terminated at a time when he or she has met the requirements for receipt of a retirement benefit and who applies for that benefit in connection with the termination should be treated as having elected retirement.
 
 
 93
 Plaintiffs' argument ignores the fact that all of Sec. 4.3 applies to participants who "shall retire" and if this phrase were construed to exclude anyone that has been terminated, plaintiffs could point to no provision of the Plan under which they would be entitled to an immediate pension in the amount they claim. The Early Retirement benefit of Plan Sec. 4.4, for example, is less than the amount available under Sec. 4.3(b)(i) or (ii), and the "vested deferred benefit" under Article V is payable only when a participant reaches 65 or in an actuarially reduced amount between ages 55 and 65. Thus, if the plaintiffs' argument were accepted, the text of the Plan itself would require denial of the benefits claimed. It follows that plaintiffs have provided no rationale under which they can enjoy Thirty-Year Benefits and, at the same time, not be bound by the specific limitations thereon found in Sec. 4.3(b).[17]
 
 V.
 
 94
 Plan Sec. 5.2 provides a benefit for any participant who is terminated prior to reaching his or her normal retirement date for any reason other than death or retirement at a Thirty-Year Retirement Date, an Early Retirement Date or a Disability Retirement Date, and who has accumulated certain specified service. As earlier noted, when an employee is being terminated who has qualified for some form of early retirement benefit and he or she elects to take that benefit in connection with the termination, he or she is regarded as having voluntarily retired for purposes of the Plan and receives the requested benefit. The benefit conferred by Sec. 5.2, however, is for those Plan participants who have not yet qualified for any form of early retirement benefit.
 
 
 95
 There is no dispute that the plaintiffs who make a claim under Sec. 5.2 are entitled to the benefit conferred by that section. The dispute concerns the amount of the benefit. Section 5.2 defines the amount of the benefit by reference to the employee's "annual retirement benefit ... computed in accordance with the provisions of Section 4.1." The Plan contends that the "annual retirement benefit" is the amount prescribed by Sec. 4.1(a), (b) and (c). Plaintiffs insist, however, that they are entitled as well to the 5% add-on provided by Sec. 4.1(d) "[i]n the case of a Participant who retires on or after August 1, 1977 and before August 1, 1986." While the Plan acknowledges that Sec. 4.1(d) is a part of Sec. 4.1, it denies that the plaintiffs claiming under Sec. 5.2 are "retiring" as that concept is utilized in Sec. 4.1(d). The Committee explained its position to plaintiffs as follows:The Committee has consistently interpreted the term "retire" to mean a separation from the employment of the employer and all members of its controlled group under one of the circumstances described in Article IV which entitle the former employee to an immediate payment of a "Retirement Benefit". If the employee severs employment for any reason other than having "retired", as defined in Article IV, his rights and the benefits to which these rights apply will be determined under Article V (deferred vested) or Article VI (death).
 
 
 96
 Based on their Credited Service and the ages of those claimants [claiming under Sec. 5.2] whom you represent, none of them could have received an immediate benefit under the terms of Article IV at the time they severed employment. Therefore, it is the holding of the Committee that none of the claimants are deemed to have "retired", as that term is used in the Plan.
 
 
 97
 * * *
 
 
 98
 * * *
 
 
 99
 It is the Committee's opinion that the amount computed under 4.1(a) through 4.1(c) is the "Basic Pension Benefit" and that if a participant retires under one of these sections of Article IV between August 1, 1977 and August 1, 1986, the Basic Plan Benefit is increased by 5% pursuant to Section 4.1(d). The Committee believes this construction to be totally consistent with the wording of the Plan and its past interpretation that payment of a vested benefit under Article V is not due to retirement.
 
 
 100
 App. at 173, 191.
 
 
 101
 We agree with the district judge that the Committee's interpretation of the Plan is not arbitrary or capricious. The relevant inquiry given the assumption we have chosen to make about the applicability of Bruch, however, is whether application of principles of contract interpretation, with no deference being given to the Committee's interpretation, leads to the conclusion that Sec. 5.2 claimants are not entitled to the 5% add-on of Sec. 4.1(d). The reference to "a Participant who retires" is ambiguous in the context of Sec. 4.1(d). When we consider the clear purpose of that section, however, as we are required to do by the rules of contract construction, we conclude that the Committee's interpretation is the correct one. In context, it is apparent that Sec. 4.1(d) provides a 5% add-on as an incentive for those participants who have the option to retire early to voluntarily elect to take that option. That purpose is not served by interpreting Sec. 4.1(d) as applicable to a participant who is being involuntarily terminated and has no present right to early retirement benefits.
 
 VI.
 
 102
 Finally, we consider plaintiffs' allegations that the conduct of the Plan fiduciaries violated ERISA so gravely as to necessitate reversal of the decisions to deny plaintiffs the claimed benefits. On this issue, the district court said only that "[a]fter receiving the record, we find that this claim lacks merit." The plaintiffs complain that this district court holding is conclusory and without support, but their own allegations of ERISA violations are equally conclusory and equally without support.
 
 
 103
 To begin with, the plaintiffs take issue with fact that the Plan fiduciaries referred to Colt's counsel for advice rather than hiring independent counsel. As noted above, 29 U.S.C. Sec. 1108(c)(3) specifically allows officers and others connected with the employer to serve as plan fiduciaries;[18] given that Congress clearly contemplated administration of ERISA plans by employers, we think that if it had intended to impose a requirement that plan administrators consult outside counsel in the course of their administration, it would have made this intention clear in the statute. Not only is such a requirement nowhere to be found in ERISA, but plaintiffs can cite no caselaw to support their view that the fiduciaries here should have engaged independent counsel to aid them in interpretation and administration of the Plan. The cases they do cite have to do with the conduct of fiduciaries in connection with the investment and management of plan assets, an area in which ERISA fiduciaries are uniformly held to stricter standards. See, e.g., Hickerson v. Velsicol Chem. Corp., 778 F.2d 365, 371 (7th Cir.1985); Donovan v. Bierwirth, 538 F.Supp. 463, 468-69 (E.D N.Y.1981), aff'd 680 F.2d 263 (2d Cir.1982), cert. denied 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982); Leigh v. Engle, 727 F.2d 113, 124-26 (7th Cir.1984).
 
 
 104
 The plaintiffs further charge that the fiduciaries should at the time of partial termination have conducted a general review of benefits payable. It is not clear to us what the basis for requiring fiduciaries to conduct such a review might be, and again, the plaintiffs are not able to point to any specific legal provision which the Plan fiduciaries can be said to have violated. Each Plan participant was provided by Colt with a statement of benefits payable to him or her in accordance with the fiduciaries' existing interpretation of the Plan, and the fiduciaries have reviewed, and taken a position with respect to, all claims for additional benefits. We have similar difficulties with the plaintiffs' contention that the fiduciaries should have given the participants written notice of the decision to seek an IRS determination that the plan was partially terminated. The plaintiffs, yet again, can cite no law that would entitle them to such notice.
 
 
 105
 Finally, the plaintiffs contend that the fiduciaries did not respond to the participants' requests for information about Plan funding and administration. While such a charge is always troubling, the particular charge in this case is too general and nonspecific to permit evaluation. The plaintiffs do not give any details of requests made by them, of refusals on the part of the fiduciaries to respond, or of particular information sought. The record contains a number of lengthy letters exchanged between the Administrator and plaintiffs' counsel, and between the Retirement Committee and plaintiffs' counsel, in which the administration and proper interpretation of the Plan are discussed. During discovery, the plaintiffs' interrogatories were answered and they obtained requested documents pertaining to Plan funding and administration; the plaintiffs do not assert that discovery was insufficient, and they themselves moved for summary judgment.
 
 
 106
 We note that even if more specific claims of improper plan administration could be made by the plaintiffs here, it is doubtful that those claims would require reversal of the district court's judgment in light of the general principle that an employer's or plan's failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy. See Wolfe v. J.C. Penney Co., 710 F.2d 388, 393 (7th Cir.1983); see also Gilbert v. Burlington Industries, Inc., 765 F.2d 320, 328-29 (2d Cir.1985). In some egregious circumstances, an exception may be made, see Blau v. Del Monte Corp., 748 F.2d 1348, 1353 (9th Cir.1985) (where employer actively concealed its written severance plan from employees, set up no claims procedure whatsoever, and denied benefits in contravention of the plan's plain terms, procedural violations of ERISA so outrageous as to render void the denial of benefits), but this is not such a case. n light of the lack of substance of the plaintiffs' allegations on this score, we must agree with the district court that the situation does not warrant the invalidation of the fiduciaries' decisions.
 
 VII.
 
 107
 For the foregoing reasons, the judgment of the district court will be affirmed.
 
 
 108
 MANSMANN, Circuit Judge, concurring and dissenting.
 
 
 109
 I concur with the majority as to the rights of most of the plaintiffs in this case; however, I would address the issue of the Thirty Year Retirement Benefit for those plaintiffs who, even though they had not reached the age of 62, had given thirty years past service to the company. Although the record and the briefs are not altogether clear on this point, responses to my questions during oral argument indicated that some plaintiffs who in fact had served for thirty years prior to the termination of their employment have been denied this benefit. This is not a situation where these plaintiffs have chosen to leave employment and have voluntarily forfeited expected benefits equivalent to a normal retirement benefit for those plaintiffs who, except for the company's decision to reduce the work force drastically and the resulting partial termination of the Plan, had every right to expect that once they had achieved the service requirement, they would not be denied unreduced benefits on the eve of reaching the age of 62.
 
 
 110
 In an abundance of caution, I would address this issue because my proposed resolution does not rely upon the reasoning advanced by the majority in support of its denial of the other benefits also at issue.
 
 
 111
 I view the fulfillment of the service requirement as the key element in triggering the award of the type of benefit at issue here. I am confident that Congress speaking through ERISA would deem this benefit "accrued" and that the Internal Revenue Code would mandate it "nonforfeitable." It would be error to permit the Plan, and ultimately the company-employer, to take full advantage of the Code's tax deferrals and also to confiscate these employee wages which justly and legally belong to the Thirty Year employees.
 
 I.
 
 112
 These particular plaintiffs contend that Section 12.1(c) of the Plan makes the Thirty Year Retirement Benefit nonforfeitable in the context of a "partial termination." This section provides:
 
 
 113
 (c) In the event of "termination" or "partial termination" of the Plan (as those terms are used in Section 411(d)(3) of the Internal Revenue Code, or any successor statutory provision) the rights of the Participants, Beneficiaries and Contingent Annuitants to benefits accrued to the date of such termination or partial termination, to the extent funded as of such date, shall be non-forfeitable.
 
 
 114
 The Plan section incorporates requirements for a plan qualifying for tax advantages under the Internal Revenue Code. The Code provides that upon termination or partial termination "the rights of all affected employees to benefits accrued to the date of such termination, partial termination, or discontinuance, to the extent funded as of such date, .. are nonforfeitable." 26 U.S.C. Sec. 411(d)(3) (1978 & Supp.1988).
 
 
 115
 A partial termination causes the accrued benefits of all nonvested or partially vested participants who have benefits that have not been forfeited before the partial termination occurs to become nonforfeitable--to the extent funded--regardless of whether the participant is employed on the exact day of the partial termination. S. Bruce, Pension Claims: Rights and Obligations 536 (1988).
 
 
 116
 No one disputes that the Plan at issue here is fully funded. The central question these plaintiffs have raised on this appeal, therefore, is whether the Thirty Year Retirement Benefit is an "accrued benefit" within the meaning of ERISA and the Code. If it is, the Plan will not qualify for tax deferrals unless the benefit is a nonforfeitable right which must be satisfied as to these plaintiffs.
 
 
 117
 I agree with the majority that Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund, 763 F.2d 574 (3d Cir.1985), represents the law of this circuit. However, since I view the facts of this case as differing substantially from those in Bencivenga, I conclude that Bencivenga is clearly distinguishable and thus does not control here.
 
 
 118
 In Bencivenga we decided that, in the context of an ongoing plan, altering the discount factor used in computing an early retirement benefit to achieve a bona fide actuarial equivalence to the normal retirement age benefit is not an impermissible reduction of accrued benefits under ERISA. Id. at 580.
 
 
 119
 These are what I perceive to be the relevant facts of Bencivenga. The plaintiff worked for 29 years and retired at the age of 52. He was eligible for an early retirement benefit at the age of 55. Shortly after the plaintiff retired, the fund trustees amended the plan, increasing the discount factor to insure that benefits paid prior to the normal retirement age would equal those payable at normal retirement.
 
 
 120
 We rested our holding on a decision that an early retirement benefit is not an accrued benefit under ERISA. We determined that the type of early retirement benefit at issue in Bencivenga would actually constitute a subsidized amount, which is not protected from reduction as an accrued benefit under 26 C.F.R. Sec. 1.411(a)-7(a)(1)(ii). Id. In writing for the court, Chief Judge Aldisert stated: "It follows ... that a plan that provides for a higher level of payments for early retirement when actuarially compared to normal retirement benefits, contains an actuarial subsidy for early retirees that is not protected as an 'accrued benefit.' " Id. Because by the amendment the trustees of the plan had merely eliminated a subsidy, we concluded that no violation of ERISA had occurred.
 
 
 121
 The issues before us differ in several significant respects from those in Bencivenga. The present case does not involve the amendment of an ongoing plan to equalize benefits. Here the plaintiffs request benefits equal to, not greater than, normal retirement benefit. Thus no question of a "subsidy" arises in this case. Furthermore, these plaintiffs concede that, should they choose to receive the Thirty Year Retirement Benefit before reaching the age of 62, the amount will be actuarially adjusted just as a normal retirement benefit would be for a participant who chooses to take retirement before the age stated in the Plan. Since Bencivenga decided that a benefit entirely different from the Thirty Year Retirement Benefit was not an accrued benefit, it has no direct application here.
 
 
 122
 Moreover, in Bencivenga, the language of footnotes 3 & 5 supports my view that the Thirty Year Retirement Benefit should be considered an accrued benefit. In footnote 3, id. at 577 n. 3, we noted that Congress has amended ERISA Sec. 204(g), 29 U.S.C. Sec. 1054(g), to include early retirement benefits within its accrued benefits protection for plan years beginning after December 31, 1984. Retirement Equity Act, Sec. 301(a)(2), Pub.L. No. 98-397, 98 Stat. 1450-51 (1984).
 
 
 123
 In footnote 5, we stated that the REA "recognizes and builds upon the distinction between actuarially reduced early retirement benefits and those that are in excess of actuarial equivalence, or subsidized benefits, choosing to treat less favorably the right to a subsidized benefit." Bencivenga, 763 F.2d at 580 n. 5.
 
 
 124
 We further stated: "The 1984 Act is thus premised on the theory that early retirement benefits may be 'accrued benefits,' and also on the view that a benefit subsidy may be reduced in circumstances that would be impermissible for an early retirement benefit that is already actuarially equivalent to the normal retirement benefit at normal retirement age," Id. (Emphasis supplied). Thus, were the REA to apply retroactively to this case, Bencivenga itself requires the conclusion that, as an actuarially equivalent early retirement benefit, the Thirty Year Retirement Benefit would be considered an accrued benefit under ERISA.
 
 
 125
 Since the Plan was partially terminated on July 31, 1982, before the amendment to ERISA, the REA is not directly applicable. However, the legislative history of the 1984 Act indicates that, even when ERISA was enacted in 1974, Congress may have considered early retirement benefits akin to normal retirement benefits. The Senate Report states that the "bill clarifies the scope of the prohibition against [decreases of accrued benefits by amendment of a plan]. The committee intends that no inference is to be made on the basis of this clarification as to the scope of the prohibition before the effective date of the provision." S.Rep. No. 575, 98th Cong., 2d Sess. 28, reprinted in 1984 U.S.Code Cong. & Admin.News 2547 2574 (emphasis added). While the language is somewhat ambiguous, taken with the committee belief that accrued benefits are "essentially retirement benefits," id. at 2573, it suggests that Congress viewed the new provision as merely a codification of existing law that early retirement benefits fell within the definition of accrued benefits.
 
 
 126
 Because I view the facts in this case as sufficiently similar to those in Amato v. Western Union Int'l, Inc., 773 F.2d 1402 (2d Cir.1985), that case as well persuades me that the benefits at issue here constitute accrued benefits within the meaning of ERISA. In Amato the plaintiffs alleged that a plan amendment reducing early retirement benefits for which they were or would have become eligible violated their rights under ERISA Sec. 204(g) and IRC Sec. 411(d)(6), prohibiting the reduction by amendment of an accrued benefit. One of the plan provisions at issue was substantially similar to that in this case: the "Class A" pension provided that a participant who had completed 20 years of service would be eligible at age 55 to receive full retirement benefits. The plan amendment deprived the plaintiffs of higher unreduced benefits, effectively forcing them to wait until age 65 for full benefits or to receive an actuarially reduced benefit if they retired before age 65.
 
 
 127
 The Court of Appeals undertook to define an "accrued benefit." It noted that ERISA Sec. 3(23) provides:
 
 
 128
 (23) The term "accrued benefit" means--
 
 
 129
 (A) in the case of a defined benefit plan, the individual's accrued benefit determined under the plan and, except as provided in section 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age, or
 
 
 130
 29 U.S.C. Sec. 1002(23) (1985 & Supp.1988) (emphasis supplied).
 
 
 131
 The court in Amato then proceeded to construe the language "expressed in the form of an annual benefit commencing at normal retirement age."[1] The court determined that since the Class A retirement benefit was calculated by precisely the same formula as the normal retirement benefit,
 
 
 132
 it is apparent that the "form of" language when read together with 29 U.S.C. Sec. 1054(c)(3) and in light of the statute's legislative history, was designed to require that a plan assure a retiree of at least as much as an actuarially-reduced equivalent but not permit the employer to deprive him of any more that might be provided by the plan.
 
 
 133
 Amato, 773 F.2d at 1408.
 
 
 134
 Here the Thirty Year Retirement Benefit is determined by the same formula used to compute the normal age 65 retirement benefit. The formula set forth in Sec. 4.1 Normal Retirement directs that years of service be multiplied by 1.1% of Final Average Compensation, to be further increased by 5% under subsection (d) of Sec. 4.1. Moreover, the Thirty Year Retirement Benefit set forth in Sec. 4.3 contrasts with the Early Retirement Benefit set forth in Sec. 4.4, which is actuarially reduced by 0.5% for each month that retirement precedes age 65. In this case, as in Amato, to give the statutory language force and effect, the Thirty Year Retirement Benefit, determined by precisely the same formula as the Normal Retirement Benefit, must be considered an accrued benefit.
 
 
 135
 In further support of its conclusion that the benefits at issue in Amato were accrued benefits, the Court of Appeals for the Second Circuit looked to ERISA'S legislative history. The following statement in the House Report relates also to the question before this court:
 
 
 136
 The term "accrued benefit" refers to pension or retirement benefits and is not intended to apply to certain ancillary benefits, .. which are sometimes provided for employees in conjunction with a pension plan, and are sometimes provided separately.... [T]he accrued benefit to which the vesting rules apply is not to include such items as the value of the right to receive benefits commencing at an age before normal retirement age, or so-called social security supplements which are commonly paid in the case of early retirement but then cease when the retiree attains the age at which he becomes entitled to receive current social security benefits, or any value in a plan's joint and survivor annuity provisions to the extent that exceeds the value of what the participant would be entitled to receive under a single life annuity.
 
 
 137
 H.R.Rep. No. 807, 93d Cong., 2d Sess. 60, reprinted in 1974 U.S.Code Cong. & Admin.News 4670, 4726 (emphasis supplied).
 
 
 138
 As the court in Amato noted, when taken out of context the phrase underlined above could be interpreted to mean any early retirement benefits; however, a careful reading of the entire passage indicates that Congress intended to distinguish ancillary or temporary benefits from those which function it is to provide essentially retirement benefits. Amato, 773 F.2d at 1409. See also Hoover v. Cumberland, Maryland Area Teamsters Pension Fund, 756 F.2d 977, 982 (3d Cir.) (stating that House Report contrasts benefits which serve a primary function of providing retirement income with specialized, ancillary benefits), cert. denied, 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 111 (1985).[2]
 
 
 139
 The court in Amato concluded that the House Report did not support the conclusion of the district court that the emphasized language excluded unreduced early retirement benefits from the definition of accrued benefits. Amato, 773 F.2d at 1410. Here as well, the language does not support excluding the Thirty Year Retirement Benefit from ERISA's protection. In fact, the Thirty Year Retirement Benefit falls more naturally into a category of expressly protected pension or retirement benefits than within the specifically excluded one of temporary or ancillary benefits.[3]
 
 
 140
 In Amato the court noted that nearly all the plaintiffs had met the service requirement of the plan; however, because the accrued benefits issue was decided in the context of a plan amendment, the court did not reach the question of whether the plaintiffs must meet the age requirement.
 
 
 141
 Recently in Blessitt v. Retirement Plan for Employees of Dixie Engine Co., 848 F.2d 1164 (11th Cir.1988) (en banc), the Court of Appeals for the Eleventh Circuit, in denying the plaintiff retirement benefits following a plan termination, emphasized the service requirement. The court held that ERISA does not require the payment of retirement benefits based on future years of service not actually worked as of the date on which the defined benefit plan terminated. Id. at 1179.
 
 
 142
 The court in Blessitt determined that the plaintiff could not rely on Amato, in which the plaintiff had received benefits "even though he had not reached the requisite age/service combination necessary to qualify for the full preamendment early retirement benefit." Id. at 1173. The court distinguished Blessitt's case from that in Amato by stating that "the benefit received [in Amato] was not calculated on the basis of years not worked. Id. (Emphasis in original.)
 
 
 143
 Although the Court of Appeals for the Eleventh Circuit interpreted the 1984 Amendments as mandating that the plaintiffs meet both age and service requirements, id. at 1174-75, it also addressed the policy concerns behind denying expected benefits to those who had given long years of service. The court stated:
 
 
 144
 It is clear that the scope of legitimate benefit expectations addressed by ERISA extends only to those benefits that employees accrue through "significant years of service." [citation omitted] Congress believed that an employee had a legitimate expectation of receiving those retirement benefits earned through long years of employment.
 
 
 145
 Id. at 1175.
 
 
 146
 I would agree with the decision in Blessit to the extent that it rests on awarding retirement benefits to those who have met the service requirement. In addition I conclude that the congressional purpose behind the passage of ERISA supports the view that, in partial termination situations, meeting the service requirement triggers the grant of retirement benefits even though the age requirement remains unfulfilled.
 
 II.
 
 147
 Although I would hold that the Thirty Year Retirement Benefit has accrued under the statute, even assuming that it has not, the purposes and policies behind ERISA justify awarding the Thirty Year Retirement Benefit to the plaintiffs here who have achieved thirty years of service.
 
 
 148
 The legislative history of ERISA leaves no doubt that Congress considered pensions to be the deferred wages of employees. Senator Harrison Williams, one of the principal architects of ERISA, stated in the floor debate that "pensions are not gratuities, ... They represent savings which the worker has earned in the form of deferred payment for his labors." 119 Cong.Rec. S29995, 30005 (daily ed. Sept. 18, 1973). Senator Jacob Javits stated: "The fact of the matter is that the private pension plan is a means for transferring earnings during the working years into income for a decent living in the older years. The worker 'works' for that pension the same way he 'works' for his wages or salary...." Id. at 30007. Although commentators have conceded that courts as yet have not treated pension rights as deferred wages, Stein, Raiders of the Corporate Pension Plan: The Reversion of Excess Plan Assets to the Employer, 5 Am.J.Tax Pol'y 117, 151 (1986), Congress enacted ERISA to protect these deferred wages of employees. Pension Asset Raids: Hearings before the House of Representatives Select Committee on Aging, 98th Cong., 1st Sess. 8 (1983) [hereinafter Hearings ] (comments of Hon. Edward R. Roybal, Chairman).
 
 
 149
 In 1974 Congress recognized that,
 
 
 150
 Unless an employee's rights to his accrued pension benefits are nonforfeitable, he has no assurance that he will ultimately receive a pension. Thus, pension rights which have slowly been stockpiled over many years may suddenly be lost if the employee leaves or loses his job prior to retirement. Quite apart from the resulting hardships, .. such losses of pension rights are inequitable, since the pension contributions previously made on behalf of the employee may have been made in lieu of additional compensation or some other benefits which he would have received.
 
 
 151
 S.Rep. No. 383, 93d Cong., 2d Sess. 45, reprinted in 1974 U.S.Code Cong. & Admin.News 4890, 4930 (emphasis supplied).
 
 
 152
 When the plan sponsor terminates a pension plan, the accrued benefits of the participants become the vested liabilities of the plan, which must be satisfied. Thereafter, remaining "surplus" assets revert to the employer. Hearings, at 9. Because in 1974 when Congress passed ERISA, it mainly was concerned with underfunding, Congress did not consider the problem of reversions.
 
 
 153
 As an example of the enormity of the reversion problem, Congress determined that between January, 1980 and August, 1983, 114 plan terminations resulted in the recapture of $443 million by sponsors of pension plans. Hearings, at 9 (remarks of Hon. Edward R. Roybal, Chairman). From 1980 to 1986 over 1,220 plans with 1.4 million participants have been terminated with reversions to sponsoring employers totaling over $12 billion. S. Bruce, Pension Claims: Rights and Obligations, 608 (1988).
 
 
 154
 The reversion of plan assets to employers following plan termination "changes the rules of the game" for millions of employees who, like the employees in the present case, "do not have enough years of life remaining to join a new game." Hearings, at 80 (comments of Arthur Williams III).
 
 
 155
 Employers have argued, and courts have largely supported their position, that employers would not be unjustly enriched if permitted to retain surplus assets. Stein, supra, at 130. Employers contend that if excess assets are used to provide employees with promised benefits, the employees will enjoy a windfall. Id. at 156. This assertion is simply inconsistent with the view that these benefit plans are designed as a precise, although deferred, equivalent of current wages. As between employers and employees, "these assets should be considered the property of the plan beneficiaries to be used for their exclusive benefit." Hearings, at 65 (statement of Thomas Woodruff, Ph.D., Former Executive Director for the President's Commission on Pension Policy) (emphasis supplied).
 
 
 156
 Far from providing a windfall to the employee, ERISA and the Internal Revenue Code provide a means for enriching the employer through tax savings. The plan sponsor receives a tax deduction when it contributes to the plan. The contribution, along with its investment return, is not taxed as ordinary income until it is paid, either as a benefit to the participant or as a reversion to the sponsor. This provision results in a tax-free investment return on the contribution after tax through the period of deferral. Stein, supra, at 167. While Congress intended this government subsidy to assist retirement saving, its purpose is perverted when the assets thus engendered inure to the plan sponsor rather than to a retiring plan participant. Indeed, one commentator has likened the tax advantage of ERISA to a "tax-free IRA" for the employer. S. Bruce, supra, at 609.
 
 
 157
 These considerations, coupled with the fact that employers are free in the context of a business decision to terminate employees on the eve of vesting, give weight to the view that benefits equivalent to normal retirement benefits, such as the ones at issue here, should accrue to those who have achieved the requisite years of service under the plan. The Thirty Year Retirement Benefit should therefore be awarded to these few plaintiffs, who regardless of their ages, have given thirty years of service to this employer.
 
 
 
 [1]
 There is no dispute that the Plan was partially terminated for purposes of ERISA as well as for tax purposes, though a partial termination under the Code may not in itself constitute a partial termination under ERISA. See 29 U.S.C. Sec. 1343(b)(4); United Steelworkers of America v. Harris & Sons Steel Co., 706 F.2d 1289, 1299 (3d Cir.1983)
 
 
 [2]
 Under Plan Secs. 10.9 and 10.11, the Administrator is responsible for day-to-day administration of the Plan and for the determination of benefits due a participant. If a participant's claim is denied by the Administrator, the participant has the right under Plan Sec. 10.11 to request that the Retirement Committee review the Administrator's determination. It is the Retirement Committee which has final control over the administration of the Plan. Not only is the Administrator a designee of the Committee, but the Administrator's determination of the amount and method of any payment to any participant is subject to the Committee's approval under Plan Sec. 12.1(e). The Administrator and Committee members all fall within ERISA's definition of a fiduciary, 29 U.S.C. Sec. 1002(21)(A), since they exercise discretionary authority in managing the Plan. The members of the Retirement Committee are named fiduciaries of the Plan. Plan Sec. 10.1; 29 U.S.C. Sec. 1102(a)
 
 
 [3]
 The plaintiffs have restated the benefit limit of Sec. 4.3(b)(i) and (ii) as a limit on the annual salary which may be taken into account when determining Thirty-Year Retirement Benefits for retiring participants with 30 years of service who are not yet 62. Plaintiffs therefore refer to this benefit limit as a cap on creditable salary; their calculations place the maximum creditable salary at $42,000. Although the Plan objects to the plaintiffs' recharacterization of the Sec. 4.3 benefit limits as a cap, we do not see that it makes any difference whether Sec. 4.3(b)(i) and (ii) are viewed as imposing benefit limits or as capping creditable salary and will therefore refer to the provision in either fashion
 
 
 [4]
 Plaintiffs' position is well summed up in p 14 of their complaint:
 The Plan arbitrarily and capriciously calculated the accrued benefits payable to the participants upon the partial termination of the Plan, on the basis of the portion of the age-65 pension benefit, rather than on the basis of the portion of the more valuable 30-year pension benefit the participants had earned as of the date of their involuntary termination of employment and thus offered the participants the same drastically reduced pension they would have been entitled to had they terminated their employment voluntarily prior to attaining 30 years of service.
 App. at 11. We stress that none of the plaintiffs who are claiming that Thirty-Year Benefits were wrongly denied them had in fact served for 30 years prior to the termination of their employment. All Plan participants who had 30 years of service at the time of their termination and who requested Thirty-Year Benefits under Plan Sec. 4.3 were granted such benefits. This is clear from the benefit claims that plaintiffs made to the Plan and its response thereto.
 
 
 [5]
 According to the defendant:
 The right to a subsidized early retirement benefit becomes non-forfeitable upon fulfillment of the conditions in the plan and it is at the same time that the subsidized early retirement benefit accrues. Prior to that time the benefit is but an expectation.
 Appellee's Brief at 27 n. 11.
 
 
 [6]
 As discussed below, the legislative history of recent amendments to the Internal Revenue Code provisions governing pension benefits is relevant to the question of how a "benefit subsidy" is defined. See infra note 12 and accompanying text. A benefit subsidy is there defined as the excess in value of a benefit over the actuarial equivalent of the normal retirement benefit. Here, early recipt of the normal retirement benefits would, under the terms of the Plan, entail considerable actuarial reduction. The Thirty-Year Benefit provision frees a retiree with 30 years of service from that reduction; even where the Sec. 4.3(b) cap applies, the Thirty-Year Benefits still have value in excess of the amount that would be available to a retiring employee under the comparable actuarially-reduced normal retirement benefit provisions. We agree with the defendant that this excess value is a subsidy
 
 
 [7]
 Apparently not yet in dispute at the time this action was filed is the related question of whether employees with 30 years of service who were not yet 62 at the time of their termination and request for benefits and whose benefits were therefore subject to the Sec. 4.3(b) cap would, when they subsequently attained age 62, become entitled to receive benefits calculated under Sec. 4.3(a), without reference to the cap. The plaintiffs do raise this issue in their brief, albeit in somewhat hypothetical terms. See Appellants' Brief at 9, 23. However, it is not asserted that the Plan has made a determination of this issue--nor that the Plan has been asked to do so by any participant. In addition, this issue, quite properly, was not addressed by the district court. In light of these circumstances, we cannot address this question at this point. See Zipf v. American Tel. & Tel. Co., 799 F.2d 889, 892 (3d Cir.1986) (participants claiming unjust denial of benefits must first address their complaints to plan fiduciaries); Wolf v. National Shopmen Pension Fund, 728 F.2d 182, 185 (3d Cir.1984) (same)
 
 
 [8]
 An additional issue raised by the plaintiffs before the district court, though not mentioned in their complaint, concerns 23 plaintiffs who were terminated shortly before the official date of partial plan termination and who were found by the Plan not to have been terminated as a result of the plant shutdown. The plaintiffs contended, and continue to assert on appeal, that these 23 participants should fall within the protection of Sec. 12.1(c). In light of our holding, we need not address this issue; Sec. 12.1(c), as we view it, would provide no additional protection to these already fully vested plaintiffs
 
 
 [9]
 Colt does have an interest in the funds retained by the Plan on account of denial of the benefits claimed by these plaintiffs, as these funds at some point either will revert to Colt, as permitted by ERISA, 29 U.S.C. Sec. 1344(d)(1), and Plan Sec. 12.1(d), see Chait v. Bernstein, 835 F.2d 1017, 1026 (3d Cir.1987), or will allow Colt to reduce its future contributions to the Plan. We also note that all three members of the Retirement Committee, which controls the administration of the Plan, are senior members of Colt's management; while the officers, employees, and agents of an employer are specifically permitted by ERISA to serve as fiduciaries of the employer's pension plan, see 29 U.S.C. Sec. 1108(c)(3), the interests of senior management of an employer may be identified with the employer's own interests rather than with the interests of the beneficiaries
 
 
 [10]
 We also note that the Thirty-Year Benefit does not accrue over time in one of the three methods required by ERISA in the case of an "accrued benefit." See 29 U.S.C. Sec. 1053(a). Thus, if the Thirty-Year Benefit were actually to come within ERISA's definition of "accrued benefit", the Plan would not qualify. Nevertheless, we believe the Plan qualifies because the Thirty-Year Benefit is not within that definition
 
 
 [11]
 In an effort to make the asserted relevance of Sec. 12.1(c) more plausible, plaintiffs at times seem to suggest that Thirty-Year Benefits accrue from the time of employment on pursuant to an implied provision of the Plan at a rate in proportion to years of service and that the reason they would not be entitled to some portion thereof in the absence of a partial termination is that, absent some form of plan termination, such benefits do not vest until one has given 30 years of service. This is obviously a skewed interpretation of a plan clearly intended to meet the requirements of ERISA and the Code. As we have noted, for a plan to comply with those statutes, accrued benefits must vest within 15 years
 
 
 [12]
 The amendment also provides that the term "retirement-type subsidy" is to be defined by Treasury regulations; no such regulations have yet been promulgated or proposed. The IRS has, however, issued a ruling on this amendment, which states in part:
 Section 411(d)(6)(B) provides that, in the case of a retirement-type subsidy, this prohibition [against reducing "accrued benefits" by plan amendment] applies only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy....
 ... A participant could, after the date of the proposed termination, satisfy the pretermination conditions necessary to receive this retirement-type subsidy....
 Rev.Rul. 85-6, 1985-1 C.B. 133, modifying and superseding Rev.Rul. 83-52, 1983-1 C.B. 87. The IRS has therefore recognized, as the amendment's legislative history requires it to do, that to be entitled to receive a contingent retirement-type subsidy like that in dispute here, a participant must meet the specified contingencies. While some conditions may be satisfied by an employee after his or her termination, a length-of-service requirement clearly cannot.
 
 
 [13]
 We agree with the district court that "[t]he sole purpose of Sec. 4044 is to marshal a plan's assets when those assets are insufficient to pay all of the benefits that the plan itself provides." App. at 196 n. 1
 
 
 [14]
 The in banc Eleventh Circuit opinion in Blessitt reached the opposite conclusion from the panel decision, 817 F.2d 1528 (11th Cir.1987), vacated 836 F.2d 1571 (11th Cir.1988). Before the panel opinion in Blessitt was vacated, the IRS announced that it would not follow that decision, and the PBGC submitted amicus briefs in support of in banc rehearing in both Blessitt and Tilley
 
 
 [15]
 It should be noted that ERISA Sec. 4044 does not apply in cases of partial termination unless, as here, it is incorporated into the plan. The plaintiffs argue that the Plan should have specified, when it incorporated Sec. 4044, that the provision should be read narrowly, and that since the Plan failed to do so Sec. 4044 and Plan Sec. 12.1(b) must be read broadly. We disagree. The reading plaintiffs would give Sec. 4044 is simply wrong, and Sec. 12.1(b) cannot be considered to incorporate that reading
 
 
 [16]
 Again, we do not address the question whether the benefits now received by these plaintiffs under Sec. 4.3(b) should, upon their attainment of age 62, be calculated instead under Sec. 4.3(a)
 
 
 [17]
 Another argument advanced by the plaintiffs is that the purpose of the benefit limit was to prevent highly-paid employees from taking favorable early retirement benefits from CIOC and then going to work for competing companies, and that because this purpose is no longer valid, the benefit limit itself should no longer be valid. While we agree that the purpose of a given benefit is helpful in resolving any ambiguity in the language used, we believe that considerations of purpose will not justify writing express limitations out of a plan and awarding a benefit in an amount clearly not contemplated when the plan was drawn
 
 
 [18]
 In light of this statutory provision, we reject plaintiffs' suggestion that the fiduciaries here should not have been allowed to serve as both Colt managers and Plan administrators simply because of the potential conflict of interest between the two positions. Plaintiffs have not pointed to any more specific circumstances that might establish some reason why these particular fiduciaries should not be allowed to make decisions as envisaged by the Plan's own terms and in accordance with ERISA
 
 
 [1]
 In Bencivenga, Chief Judge Aldisert cited the same language for a general conclusion that ERISA did not assure the particular early retirement expectations at issue there. Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund, 763 F.2d 574, 577 (3d Cir.1985). However, the opinion did not attempt to give meaning to the "in the form of" language, which was inapplicable to the facts of that case
 
 
 [2]
 The court in Bencivenga set out the same language, without analysis, merely stating that the "legislative history, therefore, supports the literal language of the Act." Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund, 763 F.2d 574, 577 (3d Cir.1985)
 
 
 [3]
 Because I view the Thirty Year Retirement Benefit and the normal retirement benefit as equivalent in respect to ERISA's protection, I conclude that the Thirty Year Retirement Benefit accrues ratably from year to year. Thus, defining the Thirty Year Retirement Benefit as an "accrued benefit" would not, as the majority suggests in footnote 10 at 1524, disqualify the Plan